## CROSBY STEAM GAGE & VALVE CO. v. MANNING, MAXWELL & MOORE, Inc. (UNITED STATES, Intervener).
### Civil Action No. 2267.

District Court, D. Massachusetts.

Oct. 4, 1943.

Harrison F. Lyman, of Boston, Mass. (Fish, Richardson & Neave, of Boston, Mass., of counsel), for plaintiff, and opposing the motion.

Frederick A. Tennant and Nathan Heard, both of Boston, Mass., for defendant.

Samuel E. Darby, Jr., of New York City, Tom C. Clark, Asst. Atty. Gen., Samuel S. Isseks, Sp. Asst. to Atty. Gen., Melville C. Williams, Sp. Atty., of New York City, and Edmond J. Ford, Sp. Asst. to Atty. Gen., for the United States.

Seymour D. Lewis, Sp. Atty., of Washington, D. C. (Wendell Berge, Asst. Atty. Gen., Ernest S. Meyers, Sp. Asst. to Atty. Gen., and Francis R. Shields, Sp. Atty., of New York City, on the brief), for the United States, for the motion to intervene.

WYZANSKI, District Judge.

This is a motion by the Government to intervene in a patent litigation between two private parties. It raises a significant procedural question.

Plaintiff's complaint is to this effect: As the owner of certain patents on valves, it entered into a license agreement with a third party to which the defendant succeeded. Under that agreement defendant is licensed to manufacture, sell and use the valves in the oil industry. Defendant is required by the agreement to pay royalties, make statements of royalties due and, what is now important, "not to sell * * * valves * * * at a price lower than the minimum price" set forth in a schedule. Defendant purported to terminate without just cause the agreement before its expiration date but continued to manufacture and sell the valves without accounting for or paying royalties. Plaintiff seeks specific performance of the agreement and an accounting.

Defendant's answer raises the defenses that it validly terminated the agreement, that the agreement violated the Sherman Anti-Trust Act, Act of July 2, 1890, c. 647, 26 Stat. 209, 15 U.S.C.A. §§ 1–7, 15 note, and that the patents were invalid.

The United States of America moves to intervene as a defendant. Its proposed answer sets forth that the license agreement violated the Sherman Anti-Trust Act in that it fixes prices of articles in interstate commerce and is part of a continuing conspiracy between plaintiff and defendant to restrain trade. Supporting the motion, counsel for the Government have informed the Court that if allowed to intervene, the Government would not ask for adjournments, would not delay the case, would take at most a few days to offer testimony, and would be chiefly concerned with directing the attention of the Court first to the operation of this and similar license contracts made by plaintiff, and second to the form of decree which the Government deems appropriate.

Defendant acquiesces in, but plaintiff opposes, the Government's motion.

It was conceded at the bar that under Rule 24 (b) of the Rules of Civil Procedure, 28 U.S.C.A. following section 723c, the Court has discretion to permit the intervention. This conclusion is implicit in the rulings made by Judges Healey, Leibell and Knight upon the Government's applications to intervene in the three cases of American Optical Co. v. New Jersey Optical Company, D.C.D.Mass.1943, 3 F.R.D. 169, General Electric Co. v. Hygrade Sylvania Corp., D.C.S.D.N.Y., 45 F.Supp. 714, and Woburn Degreasing Co. v. Spencer Kellogg & Sons, D.C.W.D.N.Y., 3 F.R.D. 7, although in each of those cases the application to intervene was denied. See also Securities and Exchange Commission v. United States Realty & Improvement Co., 310 U.S. 434, 458–460, 60 S.Ct. 1044, 84 L.Ed. 1293; Helvering v. Davis, 301 U.S. 619, 638, 57 S.Ct. 904, 81 L.Ed. 1307, 109 A.L.R. 1319. And the real issue is whether, having discretion to permit intervention, the Court should exercise it favorably to the moving party.

It is easy enough to see what are the arguments against intervention where, as here, the intervenor merely underlines issues of law already raised by the primary parties. Additional parties always take additional time. Even if they have no witnesses of their own, they are the source of additional questions, objections, briefs, arguments, motions and the like which tend to make the proceeding a Donnybrook Fair. Where he presents no new questions, a third party can contribute usually most effectively and always most expeditiously by a brief amicus curiae and not by intervention.

But against the considerations of orderliness and dispatch other factors must be weighed.

Recent investigations have stressed the extent to which private patent infringement suits have been used to promote unlawful concentration of economic power. See Temporary National Economic Committee, Investigation of Concentration of Economic Power, Final Report March 31, 1941, 77th Cong., 1st Sess., Doc. No. 35, pp. 36, 37; Monographs Nos. 16 and 31, 76th Cong., 3rd Sess. And these same investigations have shown how often the private defendant is helpless adequately to present its case against a monopolistic use of a patent, Monograph No. 31, supra, pp. 141, 142; how often the testimony fails to reveal the industrial setting in which the alleged abuses occur, Monograph No. 31, supra, p. 148; and how often the Court shapes the judicial remedy without knowing its full implication as a governing rule for a large segment of the economy, Monograph No. 16, supra, p. 72. These defects would at least in part be cured if that branch of the Government charged with the enforcement of the policy against monopoly were permitted to intervene in appropriate cases and to present the relevant considerations of fact, law and policy. Indeed in their report, the experts of the Temporary National Economic Committee recommended that "provision * * * be made [for] * * * the intervention of the Government in private suits," Monograph No. 31, supra, p. 151.

Of course there is the danger that the very possibility of intervention may simultaneously constitute not only, as it were, an additional *in terrorem* sanction for the anti-trust laws, but also a harassment depreciating the value of patents. That harassment would obviously be undesirable. And yet it is important to remember the ultimate issue that faces patentees is not whether, but where, the public authorities will challenge the use to which patents and licenses have been put. Already there is discussion of a special administrative tribunal as a new forum for the adjudication of such challenges. Final Report, supra, p. 138. Cf. p. 40, par. 5. And if the judiciary's traditional place in anti-trust law is to be preserved, it is none too early for the Courts to modify their procedures so that there may be a more realistic trial of the complex issues of economic fact and industrial policy raised in controversies involving alleged unlawful use of patents. Unless we are content that the problems of anti-trust enforcement like those of labor law, fraudulent sales of securities and unfair trade practices be removed from strictly judicial trial and entrusted to administrative tribunals immune, except for egregious errors, from full judicial review, judges must be willing to hear from more than the conventional parties in an adversary procedure, to receive expert suggestions from specialized governmental agencies, to accept economic testimony appropriate for laying down a broad rule of industrial government [cf. Monograph No. 31, supra, p. 151] and to frame decrees suited to the character of the many dimensions of the problem revealed.

For those reasons and as a step toward the modernization of the judicial trial of anti-trust issues in patent cases, the motion to intervene is granted.