E. W. WOOTEN, W. G. Hickman, R. M. Whitehead, Annie B. Davis, Hauana Suggs, Roberta Suggs, Albert C. Edwards, Clara B. Saunders, Dorothy Williams and L. C. Nixon, Plaintiffs,

v.

John MOORE, trading and doing business as Moore's Barbecue Restaurant, Defendant.

Civ. No. 631.

United States District Court
E. D. North Carolina,
New Bern Division.

Jan. 10, 1967.

J. LeVonne Chambers, Charlotte, N. C., for plaintiffs.

J. E. Tucker, Ward & Tucker, New Bern, N. C., for defendant.

Robert H. Cowen, U. S. Atty., Raleigh, N. C., Nicholas deB. Katzenbach, Atty. Gen. of the United States, by Frank E. Schwelb, Trial Counsel, U. S. Department of Justice, Washington, D. C., for applicant.

## OPINION and ORDER

LARKINS, District Judge:

### STATEMENT OF THE CASE

This as a suit in equity instituted as a class action by Negro plaintiffs pursuant to the provisions of Title II of the Civil Rights Act of 1964, 78 Stat. 243, and Title 42 U.S.C. Section 1983, 17 Stat. 13. Jurisdiction is invoked under 28 U.S.C.A. Sections 1343(3) and 1343(4) and is not disputed.

Plaintiffs, all Negro residents of New Bern, North Carolina, allege that Moore's Barbecue Restaurant is an establishment covered by Section 201 of the Civil Rights Act of 1964 (42 U.S.C. Section 2000a); that three of them on July 13, 1964 were denied service at the restaurant by the defendant-proprietor John Moore because of his well-established practice and policy of refusing to serve and discriminating against Negroes, in alleged violation of the Fourteenth Amendment to the Constitution of the United States, Article I, Section 8, Clause 3 (Commerce Clause), Title II of the Civil Rights Act of 1964, supra, and 42 U.S.C. Section 1981 (the statutory embodiment of the "equal rights" clause of the Fourteenth Amendment). The Court is requested to permanently enjoin Moore, individually and as owner and manager of Moore's Barbecue Restaurant, and his agents from discriminating against plaintiffs and other Negroes in the operation of his restaurant.

Complaint was filed November 10, 1964. On July 22, 1966, the Attorney General of the United States filed a motion for leave to intervene and to file a complaint in intervention as a party plaintiff, pursuant to the provisions of 42 U.S.C. Section 2000a–3(a) and Rule 24 of the Federal Rules of Civil Procedure. Also filed was a "Complaint In Intervention," and attached to the motion is a certification by the Attorney General that, in his judgment, this is a case of general public importance.

Defendant's response attacks the sufficiency of the moving papers and alleges that the application was not timely made, praying for a denial of the motion. Defendant alleges that the Department of Justice thoroughly investigated the case, both before and after suit was instituted, and had full knowledge of all matters in the case for nearly two years before deciding to intervene. Additionally, defendant avers that duress and prejudice will befall him if the application is allowed.

Before the Court is the question whether, in the exercise of its discretion, it should allow the Attorney General to intervene as a party plaintiff. In order that the application may be considered in a proper setting, the following facts and circumstances must be chronicled by the Court.

As indicated, Complaint was filed November 10, 1964. By agreement of counsel, time for answering was enlarged to and including February 2, 1965; meanwhile, plaintiffs filed interrogatories and requests for admissions. In his response to the requests for admissions and in his answer to the Complaint, filed January 29 and February 2, 1965, respectively, defendant admits that he follows the practice of refusing to serve Negroes in the main portion of his restaurant and on the same conditions as white patrons; at the same time, however, he denies that his establishment serves or offers to serve food and beverages for consumption on the premises to interstate travelers and denies that a substantial portion of the food and beverages served by him moves or has moved in interstate commerce. On the contrary, defendant alleges that he specifically advertises and displays prominent notices to the effect that interstate travelers will not be served, that he refrains from serving them, that his operation has no effect on interstate commerce and that no food served by him moves in interstate commerce.

Thereupon, the plaintiffs filed what amounted to an additional seventy-eight separate interrogatories asking, among other things, that defendant list by items and in specific dollar amounts, the make and brands of goods or merchandise purchased from seventy-six suppliers and sold at defendant's restaurant during the years 1963 and 1964. Through the earlier set of interrogatories, plaintiffs had already obtained lists of the following: licenses held by defendant relative to the operation of his restaurant; the local, regional, national and international trade organizations to which the restaurant belongs; the places and dates of all advertising done by defendant "during the last twelve months"; the items sold at the restaurant; the names and addresses of the suppliers of goods and products sold; the names and addresses of suppliers of furniture, kitchen equipment, dishes, silverware, soap and other sanitary supplies used at the restaurant; the names of insurance companies and financial institutions with which the restaurant does business; and other information regarding defendant's affiliation with regional or national travel and credit card organizations and the gross income and annual expenditures of the business for food and supplies. Defendant was also asked to explain how he distinguishes between interstate and intrastate travelers other than by displaying the above-mentioned notices.

Defendant answered all of the interrogatories except those asking for an itemized cost listing of his purchases for 1963 and 1964, objecting to those primarily on the grounds that the assimilation of this information would interrupt his business and work an unjust hardship and expense upon him. Alternatively, defendant offered to make his records available to the plaintiffs or their attorneys, and upon a hearing on the objections in April 1965, an agreement was reached consonant with defendant's proposal and effectuated by an Order of the Court entered May 4, 1965.

Pre-trial conference was set for June 14, 1965 upon request of counsel for

plaintiffs but was continued *sine die.* Twenty-six depositions were taken by the plaintiffs in July, and pursuant to a request by plaintffs' counsel for pre-trial at an early date "in order that we might proceed to trial in this case on the merits" (letter of Mr. Chambers to the Court, October 6, 1965), a special term was held in chambers at Trenton, North Carolina on November 22, 1965 for this purpose.

In response to a request by plaintiffs' attorney that the case be set for trial at the earliest convenience of the Court (see letter of Mr. Chambers to the Court, January 8, 1966), the Court advised that cases are calendared for trial in numerical order and that several were ahead of Wooten v. Moore at that time. Subsequently, counsel for plaintiffs again sought information as to an approximate trial date, so as to bring his discovery up to date; he anticipated trial time of one day for the plaintiffs and indicated a willingness to have the trial in another division if it would expedite matters (letter of Mr. Chambers to the Court, May 9, 1966). Replying to this inquiry, the Court indicated that the case would be calendared for trial in the Fall of 1966 and extended time for discovery to and including July 31, 1966. Meanwhile, however, the motion for leave to intervene was filed by the Department of Justice on July 22, 1966.

## CONCLUSIONS OF LAW

Federal Rule 24(b) (1) provides that upon timely application, anyone may be permitted to intervene in an action when a statute of the United States confers a conditional right to intervene. Accordingly, Congress conferred a conditional right upon the Attorney General of the United States relative to private civil actions for injunctive relief under the Public Accommodations Title of the Civil Rights Act of 1964. Section 204 of the Act provides in part: " * * * and, upon timely application, the court may, in its discretion, permit the Attorney General to intervene in such civil action if he certifies that the case is of general public importance." 42 U.S.C. Section 2000a–3(a). Both the Rule and statute set forth criteria for use by the Court in making its determination. Each require in the first instance that the application be timely; additionally, Rule 24(b) issues an express directive to the Court: "In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." The Attorney General has made his certification and filed his application, and the matter now addresses itself to the discretion of this Court and the sound exercise thereof within the framework of the applicable statute and rule of procedure, cast against a background of the facts and circumstances outlined above.

Turning to the record, it appears to the Court that the determination of a single issue will in all likelihood resolve the merits of the case. This is the issue of *coverage*—whether the defendant's restaurant is a place of public accommodation within the meaning of Title II of the Civil Rights Act of 1964. This all-determinative issue became apparent as early as January 29, 1965 when defendant filed his responses to the plaintiffs' requests for admissions and was firmly fixed by defendant's answer filed February 2, 1965. Not only did this issue become a matter of public record and public knowledge by virtue of the filing of those pleadings, but virtually all of the plaintiffs' efforts have been directed towards compiling a brief for a holding that the restaurant is a covered establishment; it is clear from the respective statements of the case filed by the parties at pre-trial on November 22, 1965 that this will be the only issue for decision at the trial, the defendant having admitted to a practice of denying service to Negroes at his restaurant on the same basis as white patrons.

The Government submits that the defense set up in this case is one

of first impression and that only as discovery developed did this action become distinguishable from others [1]—that " * * * the ordinary run of the mill private suit is not of public importance." (Memorandum In Support Of The Application Of The United States For Intervention, p. 6). Although this may be the first case in which the particular manner of establishing such a defense will be squarely presented,[2] the Court cannot lend much credence to the representation of the Justice Department that it was not aware of the nature of the defense until after discovery had developed. The issue of coverage was joined at the very outset of the litigation. The decisive nature of the question likewise did not develop or emerge gradually with discovery—on the contrary, its conclusiveness was clearly recognized by both sides from the very beginning, there being no question that the defendant will stand or fall on the resolution of this issue. (See plaintiffs' Request for Admission Nos. 1c, 1d and 2, filed January 21, 1965 and defendant's answers thereto filed January 28, 1965, and paragraphs VI of VII of defendant's Answer to plaintiffs' Complaint, filed February 2, 1965.) The foregoing summary indicates to the Court that the Government was dilatory in filing its motion more than one and one-half years after the issue was joined with which it is now concerned.

■■ This Court has heretofore considered an application for intervention in a civil rights case. See, e. g., Becton v. Greene County Bd. of Education, 32 F.R.D. 220 (E.D.N.C.1963). In that case, the application was held to be untimely because the action had become moot and because the motion to intervene was not filed until nearly two and one-half years after the lawsuit was begun. However, the time element is not the only factor to be considered in reaching a determination. Indeed, intervention has been allowed in a patent case nearly four years old where it was found that the intervenor might be bound by a judgment on the validity of the patent, that common questions of law and fact were presented, that the intervenor's interest might not be represented adequately by the original plaintiff and that the intervention would not unduly delay or prejudice the rights of the original parties. Innis, Speiden & Co. v. Food Machinery Corp., 2 F.R.D. 265 (D.Del.1942). The Court deems it necessary to consider the Government's delay in the light of all the circumstances of the case, and is directed by Federal Rule 24(b) to give special attention to whether the intervention would unduly delay or prejudice the adjudication of the rights of the original parties. Undue delay or prejudice to the rights of the original parties has been the focal point of most decisions dealing with permissive intervention. See, e. g., Degge v. City of Boulder, Colo., 336 F.2d 220 (10th Cir., 1964); Carroll v. American Federation of Musicians of the U. S. and Canada, 33 F.R.D. 353 (S.D.N.Y.1963); Allen v. County School Bd. of Prince Edward County, 28 F.R.D. 358 (E.D.Va.1961); Bisanz Bros., Inc. v. Chicago-Milwaukee-St. Paul & Pacific R. Co., 20 F.R.D. 353 (D.Minn. 1957).

1. This statement, along with common judicial knowledge that the Justice Department is vitally interested in all "Public Accommodation Cases," lends some support to the defendant's contention that the Department has been fully aware of the nature of this case from its inception.

2. In Newman et al. v. Piggie Park Enterprises, D.C., 256 F.Supp. 941, July 28, 1966, the defense raised was very similar to that in the case at bar, although the manner of establishing the defense was not precisely the same. With the exception of one restaurant, it was held that defendant was not "principally engaged in selling food for consumption on the premises." The case has been appealed, and it remains to be seen what controlling effect, if any, it shall have upon the outcome of the case at hand.

■■ There is no question but that intervention may cause delay. As put by one court:

> "Additional parties always take additional time. Even if they have no witnesses of their own, they are the source of additional questions, objections, briefs, arguments, motions and the like which tend to make the proceeding a Donnybrook Fair." Crosby Steam Gage & Valve Co. v. Manning, Maxwell & Moore, Inc., 51 F.Supp. 972, 973 (D.Mass.1943).

It is *undue* delay, though, which will require a denial of an application to intervene, and after giving detailed consideration to all the facts and circumstances of this case, the Court is of the opinion that the delay which would occur if the Government were allowed to intervene would be undue and would prevent expedience. Already, delay has occurred; the case was ready for trial and would have been tried at the October 1966 New Bern Division Term, with formal notice of the trial date duly given to the parties in September, had the Government not filed its motion during the meantime. (See colloquy between Court and counsel for Intervenor, Transcript of Hearing on Motion of United States Attorney General to Intervene, pp. 15–18.) The hearing on this motion was held October 24, 1966, and the transcript was received by the Court on December 10, 1966. In the interim, the original plaintiffs filed a motion for preliminary relief, which the Court felt obligated to consider before deciding the instant motion of a non-party movant. Having disposed of the plaintiffs' motion,[3] the case is again ready for trial pending determination of the matter at hand.

To date, the case is over two years old; the issue for decision has been ripe for twenty-three months; plaintiffs have taken numerous depositions and have propounded a myriad of requests for admissions and interrogatories; the case was pre-tried well over a year ago. If the Government's motion were allowed, it would acquire the status of a party litigant and the right to file further pleadings in the case and to exercise a reasonable amount of control over the course of the litigation. The defendant would be entitled to answer the Complaint in Intervention, and additional time and consideration would be required in disposing of the prayer for a preliminary injunction contained in the Government's proposed complaint, unless the Court determined that the newcomer would be bound by its recent ruling on a similar request made by the original plaintiffs. (See note 3, supra.) Moreover, as time passes, the original plaintiffs will again need to make additional discovery in regard to the percentages of respective foodstuffs which they seek to establish have moved in interstate commerce each year from 1963 to the date of the trial or thereabout. In turn, the defendant may be caused to expend more time and more money, otherwise not necessary, and more time may be required to hear objections to interrogatories and requests for admissions.

■ The proposed "Complaint In Intervention" was erroneously *filed* as a complaint in the action rather than as an ancillary accompaniment to a motion stating itself the grounds for intervention, as directed by Federal Rule 24(c). Failure to comply strictly with the conditions under which a party may become an intervenor has resulted in his pleading being stricken. See, e. g., Cowan v. Tipton, 1 F.R.D. 694 (E.D.Tenn.1941); 2 Barron & Holtzoff, Federal Practice and Procedure Section 603 (Wright Ed. 1961). Nevertheless, the Court over defendant's objection has entertained the motion and carefully examined all papers filed by the Department of Justice, including the Complaint in Intervention.

The Government's Complaint presents no new facts or issues not presented by

---

3. Plaintiffs' Motion for Preliminary Injunction was denied December 31, 1966.

that of the original plaintiffs. For the most part, the allegations are couched in similar language and the relief prayed for is the same, except that the Government seeks an injunction *pendente lite*. In response to the Court's query, counsel for the Government, while assuring the Court that the original plaintiffs' attorneys have been doing a thoroughly adequate job of preparing their case for trial, states that the Justice Department can do "two basic things" in addition to what counsel for plaintiffs have already done: (1) bring more interstate travelers by the defendant's restaurant "to prove the case"; (2) give the Court "the benefit of the views of the Department of Justice" on what it considers to be "a pretty important test case," along with the benefit of the investigative resources of the Federal Government. (Transcript of Hearing, p. 26) Counsel for the original plaintiffs welcome the prospect of Government financial and investigative assistance, but candidly advised the Court that they have been and are ready for trial. (Transcript of Hearing, p. 49) The Court agrees that this may be a case of "general public importance" and would ordinarily welcome the views of the Department of Justice and its investigative powers which might supplement those of the Court, legal and factual. However, all discovery taken and papers filed by a party are subject to objections, responses, motions, cross-motions and hearings thereon by the other parties, see Gen.Rule 4, U.S.Dist.Ct., E.D.N.C., all of which would further protract the litigation.

 As far as the Court is concerned, there is nothing to prevent the Government from making the fruits of its investigative resources available to the plaintiffs without being made a party to the action. Likewise, the Court can be benefitted by the Government's views by means other than intervention. When no new questions are presented, a third party can contribute more effectively by a brief *amicus curiae* than by intervention. Crosby Steam Gage & Valve Co. v. Manning, Maxwell & Moore, Inc., supra, 51 F.Supp. at 973. Here, the applicant seeks to offer aid and comfort to the existing plaintiffs, emphasizing the importance of the issue already drawn and asserting a public interest therein, but adding nothing new. Compare Bisanz Bros., Inc. v. Chicago-Milwaukee-St. Paul & Pacific R. Co., supra. The public interest and statutory policy contained in the Civil Rights Act demand that cases of this nature be expedited. A fair and just determination of the respective rights of the parties comprehends a minimum of delay, expense, inconvenience and uncertainty; further protraction contemplates more of each. The quantum of delay and prejudice measurable from the circumstances of this case if intervention were allowed weighs too heavily against the interest to be served by admitting the Department of Justice into the case as a party plaintiff at such a late hour. Where delay is unnecessary, it becomes undue, and private constitutional rights of the original parties remain unsettled.

Therefore, the Court concludes that the motion of the Attorney General is not only dilatory, but is also untimely, in that an allowance thereof would unduly delay and prejudice the adjudication of the rights of the original parties. In the further exercise of its discretion and to give the Government an opportunity to be heard, the Court will nevertheless treat the application of the Attorney General as one for permission to appear and file a brief as *amicus curiae,* when the cause comes on for trial.