**UNITED STATES of America**

v.

**STATE OF LOUISIANA et al.**

**Civ. A. No. 80–3300.**

United States District Court,
E. D. Louisiana.

May 26, 1981.

Robert C. Williams, Baton Rouge, La. and Thomas I. Atkins, William D. Wells, Margrett A. Ford and Teresa Demchak, N. A. A. C. P., New York City, for proposed intervenors Trevor Brown, et al.

Howard L. Sribnick, Nathaniel Douglas and Thomas M. Keeling, Dept. of Justice, Washington, D. C., for United States.

Mack E. Barham, Ralph S. Hubbard, III and Marie O. Riccio, Barham & Churchill, New Orleans, La., for Louisiana Board of Regents.

Paul Ferlita, Asst. Atty. Gen., New Orleans, La., for the State of Louisiana.

Martin L. C. Feldman and Robert Kutcher, Bronfin, Heller, Feldman & Steinberg, New Orleans, La., for Bd. of Trustees for State Colleges and Universities.

W. S. McKenzie and Nancy C. Tyler, Taylor, Porter, Brooks & Phillips, Baton Rouge, La., for Louisiana State University Bd. of Supervisors.

Benjamin Jones and Charles D. Jones, Jones, Jones & Jones, Monroe, La., for Southern University Bd. of Supervisors.

Before WISDOM, Circuit Judge, and SCHWARTZ and WICKER, District Judges.

CHARLES SCHWARTZ, Jr., District Judge.

Trevor Brown, a schoolchild seeking to sue by his parent and next friend, and a large group of other Black residents of Louisiana[1] seek to intervene in this litigation brought by the United States. The government's complaint alleges that Louisiana has failed to operate its public system of higher education in a manner consistent with the requirements of the Constitution and of Title VI of the Civil Rights Act of 1964, 42 U.S.C. 2000d and 2000d–1. They seek intervention individually and as representatives of the class of all Black residents of the state.

Applicants suggest that they are entitled to intervene of right under the provision of Federal Rule of Civil Procedure 24(a)(2); should the Court find that this is not the case, they urge it to permit them to intervene pursuant to its discretionary power under Rule 24(b)(2).

Rule 24(a)(2) requires those who seek intervention of right to make four separate showings; a failure to make any one of these defeats the absolute right to intervene. *NAACP v. New York*, 413 U.S. 345, 369, 93 S.Ct. 2591, 2604, 37 L.Ed.2d 648 (1973). These are:

1) Timeliness;

2) The interest of the movant for intervention in the subject matter of the litigation;

3) Assuming the fulfillment of requirement (2), a practical impairment of or impediment to those interests which would flow from a refusal to allow the intervention; and

4) The failure of parties already in the litigation adequately to protect the applicants' interest.

The Court acknowledges at the outset that movants meet with the second of the requirements; there can be no doubt

---

1. According to applicants' memorandum, the named proposed intervenors consist of:

    1. Pre-school age children and their parents who will soon be entering the public school system.

    2. Children and their parents who are presently attending public schools, including high schools, in the State, who will be applying to enter the State's institutions of higher learning.

    3. College students presently attending the State's institutions of higher learning.

    4. Public school teachers who hold degrees from the State's institutions of higher learning and who maintain their proficiency by taking additional courses from those institutions.

    5. Faculty members of the defendants' institutions of higher learning.

    6. Graduates of and contributors to the State's institutions of higher learning.

    7. Persons eligible for employment with the State's institutions of higher learning by virtue of their prior educational association with them.

that they have a sincere and legitimate interest in the subject matter of this litigation.[2] There are, however, serious questions as to the fulfillment of the remaining criteria.

█ Timeliness in this situation has a variety of contexts and connotations, and the Court finds that applicants may not currently be said to be acting in a timely fashion with respect to any of these.

Most obviously, the question of timeliness arises with reference to the fact that this case was filed in 1974, that it is now 1981, and that applicants only now press their motion. They state that the original request to intervene was filed soon after the complaint in this case and denied by the Court. It is true that the judges who then were members of this panel denied a motion to intervene brought by the NAACP and that the Fifth Circuit reversed that decision and remanded for a fuller consideration and explanation. *United States v. State of Louisiana*, 543 F.2d 1125 (5th Cir. 1976). The motion to intervene was not reurged, however, until this year. Counsel for the NAACP monitored the progress of this case throughout; they expressed their opinion that it would be possible for them to operate within the framework of the litigation as a "litigating amicus." Expressing some skepticism as to the tenability of such a status, the Court directed counsel to prepare a motion in accordance with its desire to be so recognized. Counsel thereafter informed the Court that they were unable to give such support; they subsequently brought this motion to intervene. As already noted, they proceed not in the name of the NAACP but in the names of Trevor Brown, other identified proposed intervenors, and the class the named intervenors seek to represent.

Thus, the lineage stretching from those who moved for intervention for the NAACP to those who move for intervention today is by no means a clear one. The

picture is further muddled by the fact that the Louisiana president of the NAACP has publicly stated that he and his organization "have nothing to do with" those who now seek to intervene and that "[t]hese people are acting on their own behalf." Baton Rouge Morning Advocate, March 12, 1981, 8–C. The present applicants, then, have serious problems in attempting to demonstrate that their petition is filed timely in the most apparent sense of the word. *See Diaz v. Southern Drilling Corp.*, 427 F.2d 1118, 1125 (5th Cir.), *cert. denied*, 400 U.S. 878, 91 S.Ct. 118, 27 L.Ed.2d 115, *reh. denied*, 400 U.S. 1025, 91 S.Ct. 580, 27 L.Ed.2d 638 (1970); *United States v. IBM Corp.*, 62 F.R.D. 530, 541 (S.D.N.Y.), *cert. denied*, 416 U.S. 995, 94 S.Ct. 2409, 40 L.Ed.2d 774 (1974).

Another manner in which the intervention now sought for Trevor Brown et al. by counsel who have had years' opportunity to bring such a request is possibly untimely is that it comes at a time in which those currently party to the litigation are engaged in extremely delicate and complex negotiations which they have assured the Court have some real chance in resulting in a compromise agreement or a consent decree reached among themselves. *See Diaz, supra*, 427 F.2d at 1125. These negotiations represent the culmination of extensive research and preparation. This Court has repeatedly stated its belief that the best possible result of this litigation would be one agreed upon by the parties themselves and reviewed and approved by the Court. Assuming, of course, a plan which is legally and constitutionally satisfactory, the Court would welcome the taking from it of the responsibility for the actual formulation of the specifics of a plan which (were liability to be found) would bring the state into compliance with the law. Such a proposal would presumably be mapped out by educators rather than jurists, and this Court can only conclude that this would be preferable to the necessity of the Court's carving out

---

2. A general "public interest" is insufficient ground for intervention of right. *See Blake v. Pallan*, 554 F.2d 947, 953 (9th Cir. 1978); *Piedmont Heights Civic Club, Inc. v. Moreland*, 83

F.R.D. 153, 158 (N.D.Ga.1979). In this situation, however, applicants have demonstrated a sufficient personal interest to meet the second of the Rule 24(a)(2) requirements.

its own remedy to be imposed upon hopelessly divided litigants. "Judges should not substitute their own judgment as to optimal settlement terms for the judgment of the litigants and their counsel." *Armstrong v. Board of School Directors of the City of Milwaukee*, 616 F.2d 305, 315 (7th Cir. 1980).

The proposed intervention at this juncture, given the date for commencement of trial only four months away and the concomitant necessity of intense negotiating in the interim, would pose serious threats to the fruitful continuation of the negotiations. When a party is allowed to intervene, "all discovery taken and papers filed by the party will be subject to objections, responses, motions, cross-motions, and hearings thereon by other parties, all of which will further protract the litigation." *Wooten v. Moore*, 42 F.R.D. 236, 242 (E.D. N.C.1967), *cert. denied*, 393 U.S. 1083, 89 S.Ct. 866, 21 L.Ed.2d 776 (1969). "Additional parties always take additional time." *Crosby Steam Gage & Valve Co. v. Manning, Maxwell & Moore, Inc.*, 51 F.Supp. 972, 973 (D.Mass.1943). The interest of the parties and the proposed intervenors, as all acknowledge, is entirely for the most rapid and satisfactory resolution of this case. That interest, and the public interest, would not be served at this time by allowing intervention and, perhaps with it, the "Donnybrook Fair" which could be made of these proceedings thereby.[3] *Id.*

Finally, there is a sense in which the currently proposed intervention may be said to be untimely inasmuch as it may be too early yet to decide fairly whether there is a real need for it.[4] The Fifth Circuit has observed that the best time to determine whether to allow intervention is the point at which it becomes apparent whether the parties already in the litigation are or are not adequately representing the applicants' interests. *Stallworth v. Monsanto Co.*, 558 F.2d 257, 265 (5th Cir. 1977). As will be further discussed below, the Court at this time believes that the proposed intervenors' interests are fully and fairly represented by those already in the case.

Finally, the Court notes that the fact that this proposed intervention is brought on behalf of an alleged class would guarantee yet further delay in the progress of the case were it to be granted. The parties now in the case are battling considerable odds to roll a Sisyphean rock up the hill to a mutually satisfactory conclusion; the double workload of preparing for trial while continuing in earnest negotiation is already immense. The parties' time between today and the scheduled commencement of trial is already almost entirely committed. It would be virtually impossible for counsel to occupy themselves at this point with consideration and briefing of the class certification issue, together with any ancillary ones, within the framework already set in this case, even if the Court were sufficiently without regard for human capacities as to direct them to do so. *See United States v. Board of Education of the City of Chicago*, No. 80 C 5124 (N.D.Ill. Jan. 7, 1981), slip op. at 7–8.

With respect to the above-mentioned criteria which must guide in determination of petitions to intervene of right, the proposed intervenors themselves have acknowledged that they will not be left without remedy should the Court at this time deny their petition. They enumerate alternative possibilities in their memorandum supporting the intervention:

---

3. In this vein, the Court today denies a second proposed intervention by another group—faculty members at traditionally black institutions—the members of which concededly have a legitimate personal interest in this litigation.

4. The Court is not unaware of a certain seeming peculiarity in its dual suggestions that the petition for intervention is both too early and too late. The point is, however, that an earlier petition might have enabled applicants to have participated from the beginning of these complicated and extended proceedings and that such might have been satisfactory to all in a manner in which the currently proposed plunge *in medias res* is not. As is more fully set out below, the Court does not rule out the possibility that applicants may at some later date be able to make out a concrete showing that none of the parties currently in this litigation are adequately representing their interests.

These rights include the filing of an independent lawsuit, the filing of an intervention for the purpose of appealing any final orders which are arguably deficient in curing the existing unconstitutional conduct of the defendants, and the right to enforce through Rule 71 any injunctive relief which may be ignored by the parties in the future.

Applicants' memorandum at 7. It is of course true that should the current parties' endeavors result in the entry of a consent decree, it would not be binding on movants on *res judicata* grounds. *United States v. Allegheny-Ludlum Industries, Inc.*, 517 F.2d 826, 845 (5th Cir. 1975); *see General Telephone Co. of the Northwest, Inc. v. EEOC*, 446 U.S. 318, 333, 100 S.Ct. 1698, 1707, 64 L.Ed.2d 319 (1980). Certainly the proposed intervenors remain free to make their views on the proper resolution of these matters known to the parties, and the Court has no doubt that the parties will accord substantial deference to such information not only because of counsel's experience and the value of their observations, but because of the various remedies now and later available to the proposed intervenors even though their petition is today denied.

Further, a decision as to the practical impediment to or impairment of applicants' interests cannot be made in a vacuum; it "demands consideration of the competing interest of the plaintiff and the defendant in conducting and concluding their lawsuit without undue complication, and of the public in the speedy and economical resolution of legal controversies." *United States v. City of Jackson*, 519 F.2d 1147, 1151 (5th Cir. 1975). Whatever interest applicants may have in intervention at this time is exceeded by the interest of the public and the current parties in gaining the speediest possible resolution of the issues presented by this case along with any remedies which a finding of liability could require. The United States alleged seven years ago that Louisiana operates a statutorily and constitutionally infirm system of public higher education. To any extent that assertion may be proved to be true, this case has lingered for years too long, and the Court is most disinclined to allow any further delay at this point.

■ As to the fourth of the criteria, the Court concludes that applicants have not made the necessary showing that their interests are not already adequately represented in this case.

Representation is adequate if no collusion is shown between the representative and an opposing party, if the representative does not have or represent an interest adverse to the proposed intervenor and if the representative does not fail in the fulfillment of his duty.

*Martin v. Kalvar Corp.*, 411 F.2d 552, 553 (5th Cir. 1969); *accord, United States v. Board of School Commissioners of the City of Indianapolis*, 466 F.2d 573, 575 (7th Cir. 1972), *cert. denied*, 410 U.S. 909, 93 S.Ct. 964, 35 L.Ed.2d 271 (1973); *United States v. IBM, supra*, 62 F.R.D. at 537; *see* 3B J. Moore, Federal Practice ¶ 9124.08(2).

It is of no little importance to the Court's determination of the intervention issue that the plaintiff in this action is the United States of America and that its lawyers in the Justice Department have long, solid experience in desegregation cases.[5] "[A] presumption of adequate representation generally arises when the representative is a governmental body or officer charged by law with representing the interest of the absentee." *Pennsylvania v. Rizzo*, 530 F.2d 501, 505 (3d Cir.), *cert. denied*, 426 U.S. 921, 96 S.Ct. 2628, 49 L.Ed.2d 375 (1976); *see* 7A C. Wright & A. Miller, Federal Practice and

---

**5.** The United States supports the petition for intervention here. They do so, however, upon the belief that the *Trbovich* footnote, discussed *infra*, both controls and demands intervention of right—neither of which propositions is today adopted by the Court. Further, the United States acknowledges that the timeliness of an application under Rule 24(a)(2) "is a question addressed to the sound discretion of the trial court...." Plaintiff's memorandum at 5; citations omitted. Certainly the Court does not understand the United States to say in any sense that it intends to abdicate its duty to represent applicants' interests or to do so less than fully and enthusiastically.

**364**

Procedure § 1509 at 528–29 (1972). The lawyers for the Justice Department have given the Court no reason to think that they do not intend to prosecute this action vigorously to its conclusion. Far less has there been any showing of collusion between the United States and any of the defendants or any suggestion that the United States has failed to fulfill its duty to protect adequately the interests of the proposed intervenors.

Applicants suggest, however, that the representation of their interests by the United States is necessarily inadequate because the United States is charged solely with acting in the best interests of the entire population, while applicants, although not uninterested in a system of higher education which inures to the benefit of all Louisianans, have as their focal and primary interest the welfare of the state's Blacks. Even so, both the United States and the proposed intervenors have as their root interest a system of higher public education in Louisiana which is in full compliance with the law. Their interests, while they may differ in detail at some point, have an overriding similarity; indeed they are identical. "Interests may be different without being adverse." *Peterson v. United States*, 41 F.R.D. 131, 133 (D.Minn.1966); *accord, Moore v. Tangipahoa Parish School Board*, 298 F.Supp. 288, 292 n.9 (E.D.La. 1969).

Because the test demands that the proposed intervenors' interests actually be "adverse" to those of the parties now in the litigation and putatively tending to those interests in the absence of intervention, the Court finds that the current representation of applicants' interests is entirely adequate.

Applicants argue, however, that the standard for intervention of right should be a different and somewhat lower one. They cite as authority for their proposition a footnote in *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10, 92 S.Ct. 630, 636 n.10, 30 L.Ed.2d 686 (1972), in which the Court remarked that the adequacy of representation requirement "of the Rule is satisfied if the applicant shows that representation of his interest 'may be' inadequate; and the burden of making that showing should be treated as minimal." It is necessary to consider *Trbovich* in its factual context; it was a case in which federal jurisdiction was exclusive and in which there was no possibility of the proposed intervenor's being able to bring any sort of private action had his request to intervene been denied.[6] At least one court has determined that the *Trbovich* footnote should not be extended beyond such unusual circumstances. *United States v. Board of Education of the City of Chicago, supra*, at 17. It is also noteworthy that the Court of Appeals for the Seventh Circuit announced its agreement with the standard for adequacy of representation adopted by the Fifth Circuit in *Martin v. Kalvar*, as set out above, in a case decided months after *Trbovich*. Apparently, then, that court found no conflict between the Fifth Circuit's general standard and the observation apropos of a particular sort of case, unlike the present one, made in the *Trbovich* footnote.

Even were the standard urged by applicants a proper one of universal applicability, however, the Court finds that the proposed intervenors would fail to satisfy it. As already noted, the ultimate objectives of applicants and of the United States are the same; consequently applicants must make some showing which overcomes the presumption which arises that the United States is an adequate representative of their interests. *United States Postal Service v. Brennan*, 579 F.2d 188, 191 (2d Cir. 1978). This is especially true, as the Chicago school desegregation court recognized, when the challenged representative is the department of the government which has the specific duty to vindicate the applicants' interests. *United States v. Board of Education of the City of Chicago, supra*, at 18, *citing Pennsylvania v. Rizzo, supra*, 530

---

**6.** The distinction between suits such as *Trbovich* and ones such as the current case is more fully explored and cast into a framework of "litigable and nonlitigable interests" in Note, Intervention in Government Enforcement Actions, 89 Harv.L.Rev. 1174 (1976).

F.2d at 505. Therefore, in the absence of any real conflict as to the ultimate issues of this case, there has been no showing that the representation of applicants' interests by the United States " 'may be' " inadequate.

■ Applicants request that the Court grant them leave to intervene in the exercise of its discretion pursuant to Rule 24(b)(2) should they fail to satisfy the criteria for intervention of right pursuant to Rule 24(a)(2). The rule which allows permissive intervention directs the Court explicitly to consider "whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." In light of all the foregoing, the Court declines to exercise its discretion to permit intervention pursuant to Rule 24(b)(2) at this time.

In sum, then, the efforts of the proposed intervenors are untimely; others are adequately minding their interests in this litigation; and applicants have a number of options available to them should they not feel that this lawsuit is coming, or at some point has come, to a satisfactory conclusion. The Court invites and urges applicants to participate fully as *amici*. Further, the Court's decision today is not an irrevocable one. Should the proposed intervenors at any point perceive that their interests are not being adequately represented by those already in the litigation, they are of course free to reurge their petition to intervene.

The motion of Trevor Brown et al. for leave to intervene is DENIED.