**UNITED STATES of America,**
**Plaintiff,**

v.

**INTERNATIONAL BUSINESS MA-**
**CHINES CORPORATION,**
**Defendant.**

**No. 69 Civ. 200.**

United States District Court,
S. D. New York.

July 10, 1973.

See also, D.C., 60 F.R.D. 658.

Raymond M. Carlson, James I. Serota, and Stuart P. Jasper, Antitrust Div., Dept. of Justice, Washington, D. C., for plaintiff.

F. A. O. Schwarz, Jr., Bruce Bromley, Thomas D. Barr, and Robert F. Mullen, Cravath, Swaine & Moore, New York City, Nicholas deB. Katzenbach, Vice President and Gen. Counsel, International Business Machines, Armonk, N. Y., Mark A. Belnick, Paul, Weiss, Rifkind, Wharton & Garrison, New York City, for defendant.

## MEMORANDUM

EDELSTEIN, Chief Judge.

Once again this court is called upon to decide a question of law arising from defendant's refusal to comply with this court's Pretrial Order No. 5, issued September 26, 1972.

On June 13, 1973, the Supreme Court denied an application by IBM for a stay of Pretrial Order No. 5. By letter dated June 15, 1973, counsel for IBM indicated that the defendant would not comply with the order, requiring the production of certain documents. Subsequently, the United States moved, pursuant to Local Civil Rule 14, for an order adjudging IBM in civil contempt for its disobedience of Pretrial Order No. 5. At argument on the government's motion, defendant requested a hearing pursuant to local Civil Rule 14(b). By order dated July 3, this court scheduled a hearing "limited to the issues of the fine and damages to be assessed against defendant for its alleged contempt of this court's order, Pretrial Order No. 5." On July 6, defendant noticed the deposition of the Antitrust Division of the Department of Justice and caused a subpoena duces tecum to issue from the United States District Court for the District of Columbia requiring the pro-

duction at that deposition of certain documents.[1]

On the morning of July 9 the United States submitted the instant motion requesting a protective order to halt the deposition, an order barring defendant from opposing its motion to quash the subpoena to be made in the District of Columbia and other relief. That afternoon, the court heard argument on the Government's application. Both parties agreed to consent to an order, *nunc pro tunc*, providing that the subpoena directed to the Antitrust Division shall be deemed to have issued from the United States District Court for the Southern District of New York. That order is filed concurrently with this memorandum.

■ The threshold question which the court must consider is the propriety of allowing discovery in aid of contempt proceedings under Local Civil Rule 14(b). While our local rule makes no reference to depositions or other discovery devices, it is clear that the Federal Rules of Civil Procedure must be applied.[2] Accordingly, as a general principle, it is proper to employ all the discovery devices contemplated by the federal rules in the course of contempt proceedings under local rule 14.

■ The Government's application for a protective order under Rule 26(c) must be considered in the light of the general case law governing such motions, taking into account the desire of the court to insure that its order (Pretrial Order No. 5) be promptly obeyed and the need to insure the defendant an opportunity to proceed with all discovery needed to properly prepare its defense on the issue of damages occasioned by its failure to comply with that order. The court must, of course, also consider the annoyance, embarrassment and burden on the Government which would flow from an order requiring it to comply with IBM's discovery requests. In balancing these competing interests and framing appropriate relief, the court may use many devices. Federal Rules of Civil Procedure 26(c).

While the court is not presently in a position to make any judgment with regard to the privileged status of the materials sought by IBM, it appears likely that at least some of the materials requested in the subpoena, located in the files of the Antitrust Division, and some of the questions to be propounded at the deposition will lead to claims of privilege by the Government. Constant probing into these areas will produce the kind of embarrassment that is contemplated by Rule 26(c), and the court has sought to frame an order that will minimize this effect. In addition, it appears that the requests for documents contained in the subpoena are so broad and general as to require another full search

---

1. Appendix 1 to the Notice of Deposition and the subpoena duces tecum both requested the production of the following documents:

    All documents which constitute, mention, or which in any way, directly or indirectly, relate to:

    1. IBM documents for which privilege is claimed and which were inadvertently produced to CDC which are or may be sought by the Government.

    2. Any plan by the United States for bringing this action to trial, including but not limited to:

    (a) schedules of pre-trial activity; and
    (b) manpower allocation to this litigation.

    3. Progress of this litigation.

    4. Delay of this litigation for any reasons.

    5. The Government's withdrawal from its review of IBM's documents and related circumstances concerning the excision or delivery to the Government of documents as to which privilege is claimed.

    6. The use or lack of use the Government has made of IBM documents produced before and during the pendency of this litigation.

2. Indeed, Rule 83 of the Federal Rules of Civil Procedure which authorizes the promulgation of Local Rules by District Courts provides that such local rules must not be inconsistent with the Federal Rules of Civil Procedure.

of the files of the Antitrust Division. The plaintiff has already conducted one such search and the court should not lightly order another.

■ The order, filed with this memorandum, provides for the quashing of the subpoena served by defendant on July 6 and orders that the deposition scheduled for July 11 not proceed. However, it also permits IBM to serve narrowly focused interrogatories and requests for documents on the issue of damages occasioned by its failure to comply with Pretrial Order No. 5. The plaintiff is of course free to object to any interrogatory and assert a claim of privilege with regard to any document. These questions will be treated by the court or the masters in the ordinary course as they arise. If future proceedings on this issue indicate to the court that oral depositions are in the interest of justice, then, on a proper application by IBM, such depositions will be permitted.

Since the court has decided to allow at least limited discovery by IBM against the government on the issue of the damages occasioned by IBM's failure to comply with this court's order, fairness dictates that the hearing on this issue of damages be postponed until the completion of that discovery. However, in the interest of insuring prompt compliance with Pretrial Order No. 5, the hearing, presently scheduled for July 16, will go forward, on the question of a fine, coercive in nature, and sufficient to insure compliance with the court's order.

■ It is established that the financial resources of the contemnor are an important element in determining the amount of a fine imposed for the purpose of compelling compliance with an order. Thus, in United States v. United Mineworkers of America, 330 U.S. 258, 303–304, 67 S.Ct. 677, 701, 91 L.Ed. 884 (1947), the Supreme Court discussed this question in the following language:

Judicial sanctions in civil contempt proceedings may, in a proper case, be employed for either or both of two purposes: to coerce the defendant into compliance with the court's order, and to compensate the complainant for losses sustained . . . . Where compensation is intended, a fine is imposed, payable to the complainant. Such fines must of course be based upon evidence of complainant's actual loss, and his right, as a civil litigant, to the compensatory fine is dependent upon the outcome of the basic controversy.

But where the purpose is to make the defendant comply, the court's discretion is otherwise exercised. It must then consider the character and magnitude of the harm threatened by continued contumacy, and the probable effectiveness of any suggested sanction in bringing about the result desired.

It is a corollary of the above principles that a court which has returned a conviction for contempt must, in fixing the amount of a fine to be imposed as a punishment or as a means of securing future compliance, consider the amount of defendant's financial resources and the consequent seriousness of the burden to that particular defendant. [citation omitted]

See, Sweetarts v. Sunline Inc., 299 F. Supp. 572, 579 (E.D.Mo.1969).

The hearing on the issue of a coercive fine will proceed; the hearing on the issue of damages, on which issue IBM is entitled to discovery against the Government, shall await the completion of that discovery.