**UNITED STATES of America,**
**Plaintiff,**

v.

**INTERNATIONAL BUSINESS MA-**
**CHINES CORPORATION,**
**Defendant.**

**No. 69 Civ. 200.**

United States District Court,
S. D. New York.

Aug. 1, 1973.

U. S. Dept. of Justice, Antitrust Div. by Raymond M. Carlson, Joseph H. Widmar, and James I. Serota, Washington, D. C., for plaintiff.

Cravath, Swaine & Moore by Frederick A. O. Schwarz, Bruce Bromley, Thomas D. Barr, Robert F. Mullen, Ronald S. Rolfe and George A. Vradenburg, III, New York City, Nicholas deB. Katzenbach, Vice-President and Gen. Counsel, IBM Corp., Armonk, N. Y., Paul, Weiss, Rifkind, Wharton & Garrison by Simon H. Rifkind, Edward N. Costikyan, and Mark A. Belnick, New York City, for defendant.

## OPINION

EDELSTEIN, Chief Judge:

The United States of America, petitioner herein, seeks an order adjudging respondent International Business Machines Corporation (IBM) to be in civil contempt of this court's Pretrial Order No. 5, entered September 26, 1972. At a hearing on July 16, 1973, counsel for both petitioner and respondent prefaced their remarks with a statement of "How we got here." The court too will adopt this approach and begin with a detailed account of the tangled and time-consuming events which have produced the present situation.

### How We Got Here

#### The Background

On January 17, 1969 the United States filed a complaint in this court alleging that IBM had violated Section 2 of the Sherman Act. 15 U.S.C. § 2. In addition, a number of private antitrust suits were also brought against IBM.[1]

1. Of these suits, only two remain pending. Greyhound Computer Corp. v. International Business Machines Corp. is pending on appeal in the Ninth Circuit from a judgment entered for IBM after trial in the Arizona district court. The Telex

The private suits were consolidated, pursuant to 28 U.S.C. § 1407, before Judge Neville of the United States District Court for the District of Minnesota. In the course of pretrial proceedings in one of the cases assigned to him,[2] Judge Neville ordered the accelerated production of documents to Control Data Corporation by IBM. It is as to some of these documents, produced to CDC, that IBM has asserted, in this court, its claims that the attorney-client privilege was protected by Judge Neville's order of April 18, 1972. IBM has also claimed that the privilege, if waived at all, has been waived inadvertently.

On April 4, 1972, IBM delivered to plaintiff a list of these documents which it had excised from certain rolls of microfilm that had been previously delivered to the Government. On April 7, the United States moved, in this court, for an order compelling production of the documents.[3]

After argument, the court, on September 26, 1972, entered its Pretrial Order No. 5, which has been the source of these subsequent proceedings. It provided that "IBM immediately deliver to plaintiff, in the form provided to Control Data Corporation, a copy of each document withheld and excised by it from the said microfilm, all such documents purportedly being identified and described by Charles M. Waygood, attorney for defendant, in a letter addressed to plaintiff's counsel, dated April 4, 1972, a copy of said letter being attached to and made a part of this order."

On October 6, 1972, the court denied IBM's request to amend Pretrial Order No. 5 by adding a statement pursuant to 28 U.S.C. § 1292(b), but "stay[ed] the implementation of pretrial Order No. 5 until October 20, 1972, to enable I.B.M. to seek appropriate appellate review other than by way of an application under 28 U.S.C. § 1292(b)."

*The Appellate Journey*

IBM took an appeal from Pretrial Order No. 5 to the United States Court of Appeals for the Second Circuit under 28 U.S.C. § 1291, and concurrently filed a petition for a writ of mandamus under 28 U.S.C. § 1651. On December 19, 1972, a divided panel of the Court of Appeals held that it had jurisdiction of both the appeal and the petition, and ordered that Pretrial Order No. 5 be vacated. 471 F.2d 507. On application by the United States, the court reheard the appeal *en banc*, and reversed the panel decision. In a 4–2 decision the court ruled that the Expediting Act, 15 U.S.C. § 29, requires that appellate review of Pretrial Order No. 5 be had, if at all, in the Supreme Court. Accordingly, the court *en banc* dismissed both the appeal and the petition for writ of mandamus. United States v. International Business Machines Corp., 480 F.2d 293 (2d Cir., September 1972 Term, *en banc* opinion filed May 8, 1972).

While these appellate proceedings were pending in the Court of Appeals, IBM, on November 24, 1972, filed a "protective" Notice of Appeal to the Supreme Court from Pretrial Order No. 5. The appeal was docketed on February 24, 1973. No. 72–1173.[4]

Corp. v. International Business Machines Corp. is awaiting decision after trial before the district court for the Northern District of Oklahoma.

2. Control Data Corporation v. International Business Machines Corporation (D.Minn. Civ. Action No. 3–68–312).

3. At that time there were 1175 documents in question. It is the court's understanding that since that time, after additional

review, IBM has produced a large number of these documents to the Government and that, presently, only some 700 documents remain in issue.

4. IBM has subsquently filed a petition for writ of certiorari to the United States Court of Appeals for the Second Circuit, No. 72–1662, and a petition for extraordinary writ to the United States District Court for the Southern District of New

On May 21, 1973, IBM moved this court for a further stay of Pretrial Order No. 5, and a stay was granted until June 4, 1973.[5] On June 1, an application for a stay was made to Mr. Justice Marshall. Argument was heard before him on June 4, and a temporary stay was granted, subject to further order of the Supreme Court. On June 13, the Supreme Court issued an order refusing to stay Pretrial Order No. 5 and the mandate of the Court of Appeals.

*The Contempt Proceedings*

On June 15, 1973, Mr. Bromley, counsel for IBM, in a letter addressed to the court, stated "I have respectfully concluded that I should not produce the documents [covered by Pretrial Order No. 5] unless and until it has been finally determined that they should be produced." The record of proceedings in this court is filled with similar references, made by counsel for defendant.[6]

On June 25, the court, at the request of the United States, entered its order to show cause why IBM should not be found in civil contempts for its failure to comply with Pretrial Order No. 5. On June 28, the return date of that order, the court heard argument from counsel on the question of contempt. Mr. Rifkind, on behalf of IBM, requested that a hearing be held pursuant to Local Civil Rule 14(b), on the issue of IBM's contempt and the damages thereby occasioned.[7] He also suggested that

---

York, No. 72–1661. The United States has filed its response in each of these cases and they are currently pending in the Supreme Court.

5. On May 23, the United States moved the Court of Appeals for immediate issuance of its mandate, and on May 24, IBM countered with an application for a stay of the mandate. By orders dated June 20, 1973, the Court of Appeals denied both motions as moot.

6. Mr. Bromley: May it please the Court, the documents covered by pretrial order No. 5 are in my possession. It is my decision and that of my partners that they should not be produced.

IBM's instructions to us are they should do with the documents whatever is required by the law. If in our opinion under the law as finally determined they should be produced, they will be. If in our opinion under the law as finally determined they should not be produced, they should not be produced. (Tr. June 28, 1973, p. 21).

The Court: Can we say fairly that it is also a matter of record that IBM has not complied with Pretrial Order No. 5?
Mr. Rifkind: I think it is a matter of record that IBM has withheld a large number of documents which were embraced within Pretrial Order No. 5. Those papers are, as I have said, in the possession of counsel for IBM, Messrs. Crabath, Saine [sic] & Moore, and a large number of them—some have been delivered, as indicated this morning by Mr. Carlson—a considerable number have been

withheld and are still in the custody of IBM's counsel, Messrs. Cravath, Swaine & Moore, for the purpose of testing the ultimate and final validity of Pretrial Order No. 5. (Tr. July 16, 1973, pp. 45–46).

The only uncontroverted fact of significance was that IBM's attorney had not produced some of the documents covered by Pretrial Order No. 5 to the Department. (Memorandum for IBM and its Attorneys, July 11, 1973, p. 5).

7. But if your Honor sees it the way counsel for the Government has said that, indeed, we will have to have recourse to Rule 14, not only with respect to the issue of damages, but with respect to the issue of contempt itself because this is a contempt which is not a contumacious one, if I may [say] something which sounds illogical. (Tr. June 28, 1973 p. 42).

The same request appears at page 2 of IBM's Response to Order to Show Cause, submitted June 28, 1973.
In the event that the Government presses for the excessive amounts suggested in its memorandum which are designed to frustrate appeal or (abandoning the position it took in the Second Circuit and the Supreme Court) does not support an appealable order, then Cravath, and IBM, pursuant to Rule 14 of the Federal Local Court Rules for the Southern District of New York, would and hereby do put in issue their "alleged misconduct" and "the damages thereby occasioned."

Mr. Bromley, counsel for IBM, be held in contempt, and suggested a fine of $100 per day, which penalty would be stayed pending the diligent prosecution of an appeal. (Tr. June 28, 1973 pp. 40–41). At no time during argument, did counsel for defendant take issue with the fact of IBM's noncompliance with Pretrial Order No. 5.

By order dated July 3, 1973, the court ordered a hearing pursuant to Local Civil Rule 14(b), scheduled for July 16. The hearing was "limited to the issues of the fine and damages to be assessed against defendant for its alleged contempt of this court's order, Pretrial Order No. 5 . . . ."[8] Subsequently, IBM sought discovery against the Justice Department with regard to the damages allegedly caused by its failure to comply with Pretrial Order No. 5. After a hearing on the Justice Department's application for a protective order, the court ruled, 60 F.R.D. 650, on July 10, that IBM be permitted certain discovery on the question of damages. The court also severed the question of damages from the hearing scheduled for July 16, so that this discovery would not delay the hearing on the issue of a fine.[9]

8. The order of July 3, 1973 provides as follows:

> IT APPEARING that by Order dated June 13, 1973, the Supreme Court denied the application by defendant International Business Machines Corp. (IBM) for a stay of Pretrial Order No. 5 and the mandate of the Court of Appeals for the Second Circuit, and that since that date Pretrial Order No. 5 has been in full force and effect, and it further
> APPEARING that IBM has not complied with the terms of Pretrial Order No. 5 in that it has not produced to the plaintiff the documents which it is required to produce under the terms of that order, and it further
> APPEARING that by order to show cause dated June 25, 1973, the plaintiff has sought an order adjudging IBM in civil contempt of this court for its failure to comply with Pretrial Order No. 5, and that on June 28, 1973, the return date of that order to show cause, defendant did not controvert the facts alleged in plaintiff's motion papers, and it further
> APPEARING that IBM has requested a hearing pursuant to Local Civil Rule 14(b), it is hereby
> ORDERED that a hearing, pursuant to Local Civil Rule 14(b) shall be held in this court, commencing on July 16, 1973 at 11:00 a. m., limited to the issues of the fine and damages to be assessed against defendant for its alleged contempt of this court's order, Pretrial Order No. 5, and it is further
> ORDERED that not later than the close of business on July 11, 1973,
> counsel for plaintiff and defendant shall serve upon opposing counsel and file with the court the following documents:
> (1) Proposed findings pursuant to Local Civil Rule 14(c);
> (2) Hearing memorandum;
> (3) List of all witnesses who are to be called to testify at the hearing; and
> (4) Sequentially numbered list of all documents which will be introduced at the hearing, containing a summary of contents and a statement of the issue to which each document relates, together with a copy of each such document, and it is further
> ORDERED that not later than the close of business on July 11, 1973, counsel for the parties shall submit for the court's consideration a stipulation of facts not in dispute.

9. The order of July 10, 1973 provides as follows:

> 1. The motion for a protective order and other relief filed by the United States on July 9, 1973 is granted only to the extent that the deposition of the Antitrust Division, Department of Justice, noticed for July 11, 1973 shall not go forward and the subpoena duces tecum addressed to the Antitrust Division, Department of Justice, issued from his court on July 6, 1973 is quashed.
> 2. Defendant is given leave to propound narrowly focused interrogatories and request for documents addressed specifically to the issue of damages to the United States occasioned by defendant's failure to comply with this court's Pretrial Order No. 5.

On July 16, the court conducted a hearing under Local Civil Rule 14(b), as limited by the orders of July 3 and July 10. The United States introduced evidence as to the financial condition of IBM. Specifically, a copy of IBM's Annual Report for 1972 was introduced. IBM presented no evidence at the hearing.

■ The defendant has objected to the court's decisions, (1) to eliminate the question of its "alleged misconduct" from the July 16 hearing, and (2) to postpone consideration of the question of damages, while proceeding with the hearing on the question of a fine. (Tr. July 16, 1973, p. 30). With regard to the question of damages, the court agrees with defendant that an award of damages to the Government can only be ordered after a full hearing, at which defendant is given an opportunity to rebut whatever evidence is adduced by the United States. However, the issue of a coercive fine, sufficient to compel compliance with the court's order, is wholly separate from the question of damages. *See*, United States v. United Mine Workers of America, 330 U.S. 258, 303–304, 67 S.Ct. 677, 91 L.Ed. 884 (1947). Defendant will not be prejudiced, with regard to the question of damages, because the hearing on that question was severed from the hearing on the coercive fine.

■■ IBM's claim that it is entitled to a hearing under Rule 14(b) on the question of its "alleged misconduct," is similarly without merit. The rule provides that "If the alleged contemnor puts in issue his alleged misconduct . . . he shall upon demand therefor, be entitled to have oral evidence taken thereon. . . ." However, the mere assertion that defendant places his "alleged misconduct" in issue, is not enough to invoke the provisions of the rule. Where, as here, the defendant has admitted all the facts necessary for the determination of the fact of contempt, the court will not permit it to employ the rule for purposes of delay and obfuscation.

In its response to the Government's order to show cause, IBM set out the issues relating to its alleged misconduct that it sought to raise. Even the most cursory examination of these two "issues," set out in the margin,[10] reveals that the first is addressed to the question of relief, and the second is, in effect, an attempt to reargue the merits of the underlying order. Nowhere in this or any other document, has IBM denied the factual assertions, made by the United States, which are the basis for its

---

3. That part of the hearing previously scheduled for July 16 which relates to this question of damages is adjourned pending. completion of the discovery referred to in 2 above.

4. The hearing scheduled for July 16 shall go forward on the issue of a fine to be assessed against defendant to insure compliance with Pretrial Order No. 5.

The court's memorandum accompanying this order, provided, at page 4:

If future proceedings on this issue [IBM's need for discovery] indicate to the court that oral depositions are in the interest of justice, then, on a proper application by IBM, such depositions will be permitted.

10. 1. Whether the disobedience by IBM counsel in openly and respectfully refus-

ing to produce privileged documents in order to elicit a contempt citation which would make available prompt appellate review warrants more than token sanctions.

2. Whether events occurring since the Order requiring production of the privileged documents demonstrate that the Order should be withdrawn because:

(a) The production made "in response to the process of another federal court" and claimed to be a waiver was involuntary, inevitable, made without opportunity to claim the privilege and compelled erroneously; and

(b) Government counsel's agreements, and concessions made since entry of the Order, preclude it from claiming waiver. Response to Order to Show Cause, filed June 28, 1973, p. 3.

prayer that IBM be held in contempt of court. Defendant's assertion that it has placed its alleged misconduct in issue cannot create issues of fact, where none exist.

■ If defendant's claim is that the admitted facts do not warrant the court's imposition of a sanction against IBM, then a legal question is presented, not a factual one. Counsel for IBM argued that point at the hearing held in this court on June 28, the return date of the Government's order to show cause. The assertion of that proposition does not, however, create an issue as to IBM's alleged misconduct which could properly be the subject of an evidentiary hearing.

*Where We Are*

### IBM's Failure to Comply with Pretrial Order No. 5

■ It is uncontested that IBM has failed to comply with Pretrial Order No. 5. Approximately 700 of the documents, identified in that order, have not been produced to the Government. While counsel for IBM have asserted that this court erred in entering that order, it remains in full force and effect. Applications to stay its implementation, made to this court, the Court of Appeals, and the Supreme Court, have been denied. Counsel for IBM have admitted that the documents are in their possession, and, therefore, IBM has the power to comply with the order. Accordingly, the failure to produce the documents constitutes a contempt of court.

*Civil and Criminal Contempt*

■ It remains for the court to consider whether IBM's failure to comply with Pretrial Order No. 5 constitutes a civil or a criminal contempt. In the leading case of Gompers v. Bucks Stove & Range Co., 221 U.S. 418, 31 S.Ct. 492, 55 L.Ed. 797 (1911), the Supreme Court set out the basic guidelines for resolving this question.

It is not the fact of punishment, but rather its character and purpose, that often serve to distinguish between the two classes of cases [civil and criminal contempt]. If it is for civil contempt the punishment is remedial, and for the benefit of the complainant. But if it is for criminal contempt the sentence is punitive, to vindicate the authority of the court. . . . But imprisonment for civil contempt is ordered where the defendant has refused to do an affirmative act required by the provisions of an order which, either in form or substance, was mandatory in its character. Imprisonment in such cases is not inflicted as a punishment, *but is intended to be remedial by coercing the defendant to do what he had refused to do.* The decree in such cases is that the defendant stand committed unless and until he performs the affirmative act required by the court's order. [emphasis added]

221 U.S. at 441–442, 31 S.Ct. at 498. *See,* McComb v. Jacksonville Paper Co., 336 U.S. 187, 191, 69 S.Ct. 497, 93 L.Ed. 599 (1949); United States v. United Mine Workers, 330 U.S. 258, 303–304, 67 S.Ct. 677, 91 L.Ed. 884 (1947); United States v. Ross, 243 F.Supp. 496, 499 (S. D.N.Y.1965). Since the court's objective in this case is to force compliance with its order (Pretrial Order No. 5), the authorities cited above require that the finding here be of civil, and not of criminal, contempt. While the distinction between the two forms of contempt have not always been made crystal clear,[11] two considerations lead to the conclusion that a finding of civil contempt is the appropriate remedy in this case. First, as noted above, the purpose of the proposed sanction is remedial, to coerce compliance with the court's order, and not punitive. Second, the proposed

11. Dobbs, Contempt of Court: A Survey, 56 Corn.L.Rev. 183, 235–49 (1971).

sanction is contingent in nature, and defendant will be given the opportunity to purge itself of the contempt by complying with Pretrial Order No. 5.

### Of Attorneys and Clients

██ Having concluded that civil contempt is the proper remedy to be imposed for violation of Pretrial Order No. 5, the court must consider IBM's argument that the sanction should run against Messrs. Cravath, Swaine & Moore, counsel to IBM. IBM contends that by pursuing this course of action, the court can set the stage for an immediate appeal which will test the merits of Pretrial Order No. 5. While the court agrees with counsel for defendant that the legal question presented by Pretrial Order No. 5 is of significant interest, it does not conclude that this should affect its decision in framing an appropriate contempt order. Absent a formal certification under 28 U.S.C. § 1292(b), it is not proper for the district court to enter an order which is designed to either thwart or promote an interlocutory appeal. The decision as to the appealability of an order of the district court is a matter properly to be decided by the court of appeals. The district court can, and should, do no more than frame an order which it believes to be proper in the circumstances of the case before it. Thus, this court rejects IBM's assertion that it should consider the question of appealability in shaping its contempt order.

Pretrial Order No. 5 requires that "*IBM* immediately deliver to plaintiff, in the form provided to Control Data Corporation, a copy of each document withheld and excised by it from the said microfilm. . . . " (emphasis added) In the clearest of terms, the order requires that IBM, the defendant, perform certain acts. There is no requirement that Cravath, Swaine & Moore produce any documents to the Government.

While it is true that a corporation can only act through its agents, the duty which the order imposes, and the sanctions for failure to comply, run against the corporation.

██ . Mr. Bromley, counsel for IBM has asserted that "the documents covered by pretrial order No. 5 are in my possession. It is my decision and that of my partners that they should not be produced." (Tr. June 28, 1973, p. 21.) However, it is settled that reliance on the advice of counsel is not a defense to an act of civil contempt. Bigelow v. RKO Radio Picture, 78 F.Supp. 250, 258 (N.D.Ill.), aff'd, 170 F.2d 783 (7th Cir. 1948); *see*, United States v. Goldfarb, 167 F.2d 735 (2d Cir. 1948). The assertion of counsel, that he is in possession of the documents, production of which is required by Pretrial Order No. 5, is not sufficient to transfer the duty imposed by the order from the client to his attorney.

Cases such as Appeal of the United States Securities and Exchange Commission, 226 F.2d 501 (6th Cir. 1955) do not bear on this question. There, the district court believed, albeit erroneously, that the Securities and Exchange Commission was required to produce certain documents to a private plaintiff in a pending civil suit. When the SEC, through its agents, failed to comply with the court's request, the court committed the Commission's General Counsel,[12] who had been sworn as a witness, to the custody of the United States Marshal. In that proceeding, there was no meaningful way in which the SEC could have been held in contempt, except by applying the sanction to one of its agents. The concept of fining the Commission is, of course, an empty one. In addition, the order of the court was addressed to the General Counsel as an individual, who, at least in form, was subject to the jurisdiction of the court in his capacity as a sworn witness. Neither of these

---

12. That General Counsel, The Honorable William H. Timbers, now serves as a member of our Court of Appeals.

**667**

considerations applies in the case before this court. Pretrial Order No. 5 is addressed to the defendant, IBM, not to counsel; and a fine levied against the corporation is, in the court's view, a meaningful and effective sanction.

*How Much is Enough?*

From the foregoing, the court has concluded that defendant IBM should be adjudged in civil contempt and a fine should be levied against it to coerce compliance with Pretrial Order No. 5. The final question presented is the size and shape of the fine to be imposed.

At the outset it must be admitted that, except for the numerologist, none can say with precision that there is any one amount which is the only proper fine under these circumstances. Were this an assessment of damages, the court could confidently rely on established methods of judicially determining the appropriate sanction. But with regard to this coercive fine, the court can only rely on its best judgment of the minimum amount which is sufficient to compel defendant to comply with Pretrial Order No. 5.

■ It should be observed that in determining the amount of a coercive fine it is proper to take into account the contemnor's financial resources and ability to pay. United States v. United Mineworkers of America, 330 U.S. 258, 303–304, 67 S.Ct. 677, 91 L.Ed. 884 (1947); Sweetarts v. Sunline Inc., 299 F.Supp. 572, 579 (E.D.Mo.1969). At the July 16 hearing, the Government introduced a copy of IBM's 1972 Annual Report which purports to set out the financial position of the corporation. IBM has not contested the accuracy of these figures. It reveals that IBM's net earnings for 1972 were $1,279,267,555 as against $1,078,846,907 for 1971. The stockholders equity as of December 31, 1972 is reported as $7,565,894,847.

■ Based on this information and the court's belief that a substantial fine is required to insure compliance with its order, a fine of $150,000 per day will be levied against IBM for each day, after a date certain as set forth in the order accompanying this opinion, that it fails to produce to plaintiff the documents which are the subject of Pretrial Order No. 5. The imposition of this fine shall be contingent on IBM's compliance with the order, and no fine shall be imposed for the day on which IBM produces the documents, or for any day thereafter.

*Where Are We Going?*

■ The litigation surrounding Pretrial Order No. 5 in this court, the Court of Appeals, and the Supreme Court has required the expenditure of substantial resources by both the parties and the judiciary. Three actions are currently pending in the Supreme Court and it seems likely that further energies will be expended.

While all counsel owe an obligation to their clients and the court to pursue all legal and ethical avenues to protect the rights and interest of those clients, none should lose sight of the ultimate objective toward which court and counsel should strive: the prompt resolution of the allegations contained in the complaint. The court's efforts are directed toward this end, and it is hoped that this objective is shared by counsel. Peripheral issues, of whatever import, should not lead us to lose sight of this basic objective.