See also D.C., 316 F.Supp. 803.

**GENERAL MOTORS CORPORATION**
and General Motors Overseas Distributors Corporation, Plaintiffs,

v.

**John A. BURNS,** as Governor of the State of Hawaii, Bertram T. Kanbara, as Attorney General of the State of Hawaii, and the Motor Vehicle Industry Licensing Board, an agency of the State of Hawaii, Defendants,

National Automobile Dealers Association and Hawaii Automobile Dealers Association, Intervenors.

Civ. No. 70-3118.

United States District Court,
D. Hawaii.

June 10, 1970.

Martin Anderson, Honolulu, Hawaii, Morris M. Doyle, Burnham Enersen, Craig McAtee, Terry J. Houlihan, San Francisco, Cal., and Ross L. Malone, Detroit, Mich., for plaintiffs; Jenks, Kidwell, Goodsill & Anderson, Honolulu, Hawaii, McCutchen, Doyle, Brown & Enersen, San Francisco, Cal., of counsel.

Bertram T. Kanbara, Atty. Gen., State of Hawaii, Morton King, Sr. Deputy Atty., Jeffrey N. Watanabe, Deputy Atty. Gen., Honolulu, Hawaii, for defendants.

Clinton K. L. Ching, Honolulu, Hawaii, and Jerry S. Cohen, Harold E. Kohn, P. A., Philadelphia, Pa., for intervenor National Automobile Dealers Assn.; Lewis, Saunders & Key, Honolulu, Hawaii, of counsel.

Vernon F. L. Char, Honolulu, Hawaii, and Maxwell M. Blecher, Peter J. Donnici, San Francisco, Cal., for intervenor Hawaii Automobile Dealers Assn.; Damon, Shigekane & Char, Honolulu, Hawaii, of counsel.

## DECISION ON MOTIONS TO INTERVENE

PENCE, Chief Judge.

The Hawaii Automobile Dealers Association (HADA) and the National Automobile Dealers Association (NADA) have moved to intervene in this suit between General Motors Corporation (GM) and the State of Hawaii.[1] GM and its wholly-owned subsidiary General Motors Overseas Distributors Corporation (GMODC) have sued John A. Burns, Hawaii's governor, and other state officials, seeking to enjoin as unconstitutional various parts of the Motor Vehicle Industry Licensing Act (Act), H.R.S. ch. 437. GMODC, which has offices in Hawaii, obtains vehicles and related products from GM and sells them at wholesale prices to Hawaii dealers pursuant to its Vehicle Dealer Selling Agreement (Selling Agreement), a twenty-seven page form contract that defines the relationship between GMODC and the individual dealers.

Once the Act becomes effective on July 1, 1970, GMODC and some of its employees will have to be licensed in order to continue doing business in Hawaii. The heart of the Act, § 437–28, contains a lengthy list of grounds for denying or revoking a license. Violation of each ground is also criminal, carrying a fine ranging from $50 to $500. GM and GMODC claim that § 437–28 unreasonably restrains interstate commerce by making illegal their practices of providing fleet-sale discounts, of terminating

---

1. For a provocative discussion of the problems of intervention see: Shapiro, Some Thoughts on Intervention Before Courts, Agencies, and Arbitrators, 81 Harv.L.Rev. 721 (1968).

dealer Selling Agreements for inadequate sales performance, and of charging Hawaii dealers the cost of transporting vehicles and parts to Hawaii from the mainland. GM and GMODC also raise some due process and impairment of contract issues.

HADA's and NADA's interests in this suit differ, as do the effects the suit will have upon them. HADA represents Hawaii auto dealers, all of whom must be licensed under the new Act. HADA strongly lobbied for the Act in the Hawaii legislature, as being necessary for correction of what it considered to be abuses and impositions upon its members by motor vehicle manufacturers. NADA, by contrast, is a nationwide organization of auto dealers, over 21,000 in all, none of whom, aside from a small percentage of Hawaii members, are subject to the Act or protected by it. NADA fears that the final decision here may jeopardize its like position in other states, between 25 and 30 of whom have or are considering legislation comparable to Hawaii's Act. Because HADA's and NADA's spheres so differ, their motions to intervene require separate analysis.

## HADA

■ Rule 24(a), F.R.Civ.P., provides that a person has a right to intervene when he clears three hurdles—interest, practical impairment, and inadequate representation.[2] Whether HADA has requisite standing resolves into two questions—first, whether an individual Hawaii auto dealer has sufficient interest, and second, whether HADA, a nonprofit corporation, may represent individual dealers' interests here. On the first issue few cases find that a person trying to intervene does not have the required sufficient interest.[3] Here a Hawaii dealer has a direct economic interest in preserving the protection that the Act gives him. On the second issue those same local dealers organized HADA specifically to represent them in obtaining legislation for their benefit. Since defending in the courts the constitutionality of the Act for which HADA fought in the legislature is within this purpose, HADA is an acceptable spokesman for its members. HADA has sufficient interest to intervene, just as the Independent Refiners Association did in *Atlantic* and as the union did in *Allendale*.[4]

■ Whether HADA clears the second hurdle, i. e., whether the disposition of this case will practically impair HADA's interest, depends upon the level of "practical" impairment required under Rule 24(a). The Supreme Court in *Cascade*[5] may have adopted a rather low level, but, absent a more specific statement from the Court, the Advisory Committee's intent as to the meaning of

2. Rule 24(a) says, "[A]nyone shall be permitted to intervene in an action * * * when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties."

3. See Smuck v. Hobsen, 132 U.S.App.D.C., 372, 408 F.2d 175 (1969) (member of a school board and the former superintendent of schools do not have sufficient interest to intervene in a suit between school children and the board) ; Toles v. United States, 371 F.2d 784 (10th Cir. 1967) ; Old Colony Trust Co. v. Penrose Industries, 387 F.2d 939 (3d Cir. 1968), cert. denied 392 U.S. 927, 88 S.Ct. 2283, 20 L. Ed.2d 1385.

4. Atlantic Refining Co. v. Standard Oil Co., 113 U.S.App.D.C. 20, 304 F.2d 387 (1962) ; Textile Workers Union of America v. Allendale Co., 96 U.S.App.D.C. 401, 226 F.2d 765 (1955).

5. Cascade Natural Gas Corp. v. El Paso Natural Gas, 386 U.S. 129, 87 S.Ct. 932, 17 L.Ed.2d 814 (1967). Two cases which have found no practical impairment are : Norwalk CORE v. Norwalk Board of Education, 298 F.Supp. 208 (D.Conn. 1968) ; Edmondson v. State of Nebraska ex rel. Meyer, 383 F.2d 123 (8th Cir. 1967).

practical impairment is entitled to great weight. In the 1966 amendments to the Rules of Civil Procedure, the Advisory Committee used identical wording as to practical impairment in both Rule 19(a) and Rule 24(a). The degree of impairment in the former context "is essentially the same as the 'prejudice' test long used by the courts in determining indispensability."[6] The Advisory Committee commented on the new wording in Rule 24(a):

"The amendment provides that an applicant is entitled to intervention in an action when his position is comparable to that of a person under Rule 19(a) (i) (2)."[7]

Comparable, however, does not necessarily mean equivalent. When practical impairment appears under Rule 24(a), the would-be intervenor still must clear the hurdle of inadequate representation. Besides commenting that the practical impairment test of Rule 24(a) is comparable to that of Rule 19(a), the Advisory Committee, in defining the level of practical impairment required to intervene under Rule 24(a), also said:

"If an absentee would be *substantially affected* in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene." (Emphasis added.)[8]

As indicated above, the outcome of this case may substantially affect the dealers whom HADA represents. GM and GMODC are attacking parts of the Act, § 437-28(b) (22) (A), (C), (D) and (F), which bar distributors or manufacturers from coercing local dealers by threats to cancel franchises, from threatening to cancel franchises unfairly, from delaying delivery of cars unreasonably, and from discrimination against local dealers in favor of mainland dealers. If GM and GMODC succeed in enjoining these provisions of the Act, Hawaii dealers will lose a substantial amount of the protection for which they fought in the legislature. Thus HADA meets the practical impairment test of Rule 24(a).

■ HADA still faces the issue of adequate representation.[9] Two different standards for determining adequate representation have been applied. A strict test, applied basically in damage suits, requires a showing of collusion, adversity of interest, or possible nonfeasance in order to establish inadequate representation.[10] In damage suits the financial stake of the parties in the outcome justifies a presumption that they will attack or defend vigorously and resourcefully. One court has said in refusing to allow a union to intervene on

6. 3A Moore, Federal Practice, ¶ 19.07–1 [2.–1] at 2253 (1969).

7. 3B Moore, Federal Practice, ¶ 24.01[10] at 24–16 (1969).

8. *Ibid.*

9. The 1966 amendments did not change the test of adequate representation but may have shifted the burden of showing it from the applicant to the opposing party. See Nuesse v. Camp, 128 U.S.App.D.C. 172, 385 F.2d 694, 702 (1967); Moore v. Tangipahoa School District, 298 F.Supp. 288, 291 (E.D.La. 1969); 3B Moore, Federal Practice, ¶ 24.09–1[4] at 24–314 et ff. (1969).

10. Levin v. Mississippi River Corp., 47 F. R.D. 294 (S.D.N.Y. 1969); Moore v.

Tangipahoa Parish School Board, *supra*, n. 9; Martin v. Kalvar, 411 F.2d 552 (5th Cir. 1969); Kheel v. American Steamship Owners Mutual Pro. and Indem. Ass'n., 45 F.R.D. 281 (S.D.N.Y. 1968); Peterson v. United States, 41 F. R.D. 131 (D.Minn. 1966); Alleghany Corp. v. Kirby, 344 F.2d 571 (2d Cir. 1965); Stadin v. Union Electric Co., 309 F.2d 912 (8th Cir. 1962); Farmland Irrigation Co. v. Dopplmaier, 220 F.2d 247 (9th Cir. 1955); Kind v. Markham, 7 F.R.D. 265 (S.D.N.Y. 1945); MacDonald v. United States, 119 F.2d 821 (9th Cir. 1941). The only one of these cases not involving damages is *Moore*, a school desegregation case.

the side of a railroad, defending against an employee's claim to extra seniority:

"If the plaintiff prevails on the question as to his seniority, the defendant railroad may be required to pay damages. .The defendant therefore has a financial interest to protect in relation to this question, and it can be expected to make an energetic defense to the issue." [11]

In contrast to damage cases which adopt a strict test of adequate representation, there are a number of injunctive actions that adopt a liberal test thereon.[12] These cases, if they refer to the wording of Rule 24(a) at all, stress the phrase in old Rule 24(a) that one may intervene if his representation "may be" inadequate.[13] The distinction between damage cases and injunctive actions [14] is implicit in the Eighth Circuit's handling of the *Bisanz* case. After the district court denied Ford's motion to intervene in this injunctive action, adopting the strict adequate representation test,[15] the Eighth Circuit reversed, adopting the liberal test.[16]

Since this instant case is basically injunctive and not a suit for money damages, the liberal test of adequate representation should be and is applied. Under the liberal test, HADA qualifies for intervention because representation of its interests may be inadequate. The State of Hawaii has indicated the need for HADA's participation in a filed statement, saying in part:

"HADA through its automobile dealer members assisted in the drafting of the legislation [involved here], testified on the need for legislation, pointed out the abuses in the industry, provided resource information and showed where the legislation was necessary to protect the public interest. HADA and its members have unique knowledge of the Hawaii automobile industry and NADA has such knowledge from a national standpoint, including knowledge of similar statutes in other jurisdictions and of comparative industry problems. * * * The State of Hawaii supports their motions in order to fully present to the Court all of the facts in this case."

When a party to the action does not have access to relevant facts available to

11. Wilson v. Illinois Central Railroad Co., 21 F.R.D. 588, 589 (N.D.Ill.1957). The Supreme Court has recently expanded the concept of an aggrieved party, relying upon the *economic incentive to insure adequate representation of interests broader than those of the aggrieved party.* Ass'n. of Data Processing Service Organizations, Inc. v. Camp, 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970).

12. Smuck v. Hobsen, *supra,* n. 3; Nuesse v. Camp, *supra,* n. 9; Justice v. United States, 365 F.2d 312 (6th Cir. 1966); Atlantic Refining Co. v. Standard Oil, *supra,* n. 4; Ford Motor Co. v. Bisanz Bros., Inc., 249 F.2d 22 (8th Cir. 1957); Textile Workers Union of America v. Allendale Co., *supra,* n. 4; Kozak v. Wells, 278 F.2d 104 (8th Cir. 1960); Wolpe v. Poretsky, 79 U.S.App.D.C. 141, 144 F.2d 505 (1944), cert. denied 323 U.S. 777, 65 S.Ct. 190, 89 L.Ed. 621; Champ v. Atkins, 76 U.S.App.D.C. 15, 128 F.2d 601 (1942).

13. Although the 1966 amendment omitted this phrase, the test remains the same. See n. 9, *supra.*

14. The distinction by no means disposes of all cases. For instance, a strict test of adequate representation may be appropriate for government antitrust cases, even when they are basically injunctive because of the government's primary responsibility for such "proceedings." Also, Congressional policy, placing the basic duty of enforcement on government officials, may circumscribe private parties' right to intervene in injunctive actions arising under particular statutes. See Apache County v. United States, 256 F.Supp. 903 (D.D.C. 1966); Reich v. Webb, 336 F.2d 153 (9th Cir. 1964), cert. denied 380 U.S. 915, 85 S.Ct. 890, 13 L.Ed.2d 800.

15. Bisanz Bros., Inc. v. Chicago-Milwaukee-St. Paul & P.R.R., 20 F.R.D. 353 (D. Minn. 1957).

16. Ford Motor Co. v. Bisanz Bros., Inc., 249 F.2d 22 (8th Cir. 1957).

an intervenor, that party may be unable to represent the intervenor adequately.[17]

HADA, having cleared the three hurdles of Rule 24(a), has a right to intervene.

### NADA

 Nada claims that any adverse opinion rendered here may impugn the constitutionality of legislation it has already obtained in some states and may derail the legislation it is pushing towards enactment in others. While the doctrine of stare decisis can sometimes cause sufficient practical impairment to warrant intervention,[18] the answer depends on the facts of the particular case. Here the questions of law involve not matters of first impression but the interstate commerce clause and the due process clause of the United States Constitution, both of which have been exhaustively litigated, neither of which will be substantially reformulated by the decision in this case. Further, the decision here, resting substantially on the particular facts of Hawaii's automobile market, as it must, will have slight relevance to later litigation on the mainland. The decision's relevance to later mainland legislation appears even more tenuous. Since the decision in this case will not substantially affect NADA, it has no right to intervene under Rule 24(a).

 NADA seeks also to intervene permissively under Rule 24(b). Permissive intervention hinges on whether the intervenor "will unduly delay or prejudice the adjudication of the rights of the original parties." As indicated in the passage quoted from the statement of the State of Hawaii, NADA has something to contribute to this lawsuit.[19] Its presence will not unduly complicate the case as was the situation in *Jewell Ridge* and in *Levin*.[20] Therefore, NADA may intervene permissively under Rule 24(b).

Both motions to intervene are granted.

---

17. Atlantic Refining Co. v. Standard Oil, *supra*, n. 4.

18. Atlantis Development Co. v. United States, 379 F.2d 818, 826–829 (5th Cir. 1967) (practical impairment exists where the case presents questions of first impression, the decision of which will in all probability determine the intervenor's claim when it subsequently arises).

19. Textile Workers Union v. Allendale Co., *supra*, n. 4.

20. Jewell Ridge Coal Corp. v. Local No. 6167, 3 F.R.D. 251 (W.D.Va. 1943) ; Levin v. Mississippi River Corp., 47 F.R.D. 294 (S.D.N.Y. 1969).

