**UNITED STATES of America,**
**Plaintiff,**

**v.**

**INTERNATIONAL BUSINESS MA-**
**CHINES CORPORATION,**
**Defendant.**

**No. 69 Civ. 200.**

United States District Court,
S. D. New York.
Civil Division.

March 6, 1974.

See also 2 Cir., 493 F.2d 112.

Raymond M. Carlson, Joseph H. Widmar and James I. Serota, U. S. Dept. of Justice, Antitrust Div., Washington, D. C., for plaintiff.

Paul, Weiss, Rifkind, Wharton & Garrison, New York City, (Simon H. Rifkind, Edward N. Costikyan, Mark A. Belnick, New York City, of counsel), for defendant and applicant for intervention.

## OPINION

EDELSTEIN, Chief Judge:

Cravath, Swaine & Moore (Cravath), attorneys representing defendant, International Business Machines Corporation (IBM), moves "to intervene as a matter of right, *nunc pro tunc,* in this proceeding,[1] and, upon intervention, to vacate this Court's Adjudication of Contempt against . . . IBM dated August 1, 1973 . . . ."[2] Additionally, IBM moves for the vacation of this court's contempt adjudication on due process and equal protection grounds.

On August 1, 1973 this court held IBM in civil contempt for its continued failure to comply with Pretrial Order No. 5, which was entered on September 26, 1972. United States v. International Business Machines Corp., 60 F.R.D. 658 (S.D.N.Y.1973), appeal dismissed, 493 F.2d 112 (2d Cir., 1973), petition for cert. filed, 42 U.S.L.W. 3407 (U.S. Jan. 7, 1974) (No. 73–1065). Pretrial Order No. 5 directed IBM to furnish plaintiff with documents that it disclosed to Con-

---

1. By this proceeding the applicant obviously refers to the contempt proceeding and not the main action. It is a firmly established general principle that a private party will not be permitted to intervene in government antitrust litigation. *See, e. g.,* Sam Fox Publishing Co. v. United States, 366 U.S. 683, 81 S.Ct. 1309, 6 L.Ed.2d 604 (1961); Allen Calculators, Inc. v. National Cash Register Co., 322 U.S. 137, 64 S.Ct. 905, 88 L.Ed. 1188 (1944); 7A C. Wright & A. Miller, Federal Practice and Procedure: Civil § 1908, at 499 & n. 17 (1972) [hereinafter cited as 7A C. Wright & A. Miller]; Shapiro, Some Thoughts on Intervention Before Courts, Agencies, and Arbitrators, 81 Harv.L.Rev. 721, 743 & n. 103 (1968).

It should be noted that in all these cases the proposed intervenor attempted to intervene as a party plaintiff. In this context it is assumed that the United States adequately represents the public interest. *See, e. g.,* Sam Fox Publishing Co. v. United States, 366 U.S. 683, 81 S.Ct. 1309, 6 L.Ed.2d 604 (1961); United States v. National Bank & Trust Co., 319 F.Supp. 930 (E.D.Pa.1970); United States v. CIBA Corp., 50 F.R.D. 507 (S.D.N.Y.1970), 7A C. Wright & A. Miller § 1909, at 528 & n. 84. There are, however, certain limited circumstances in which private parties have been allowed to intervene in government antitrust actions. *See, e. g.* Cascade Natural Gas Corp. v. El Paso Natural Gas Co., 386 U.S. 129, 87 S.Ct. 932, 17 L.Ed.2d 814 (1967), *noted in* 1968 Duke L.J.

117, 81 Harv.L.Rev. 221 (1967), 53 Iowa L. Rev. 219 (1967); 3B J. Moore, Federal Practice ¶ 24.06 [3.–4] & nn. 2–4 (2d ed. 1969) [hereinafter cited as 3B J. Moore]. Both the general rule and the exceptions thereto are inapplicable to the instant case. Cravath is attempting to intervene as a party defendant in a proceeding apart from the antitrust merits of the instant case.

Although neither the Government nor Cravath has cited any case in which attorneys representing a party sought intervention in an action for purposes of protecting work product, there is an indication that one may apply to intervene for a limited purpose apart from the subject matter of the main action. *See* Gaines v. Dixie Carriers, Inc., 434 F.2d 52 (5th Cir. 1970), in which a law firm discharged by plaintiff was granted intervention to protect its interest in the proceeds of the action under a contingent fee contract with plaintiff.

2. Familiarity with this court's prior opinions concerning the contempt proceeding is assumed. United States v. International Business Machines Corp., 69 Civ. 200, 62 F.R. D. 523 (S.D.N.Y., 1974); United States v. International Business Machines Corp., 60 F.R.D. 658 (S.D.N.Y.), appeal dismissed, 493 F.2d 112 (2d Cir., 1973), petition for cert. filed, 42 U.S.L.W. 3407 (U.S. Jan. 7, 1974) (No. 73–1065); United States v. International Business Machines Corp., 60 F.R.D. 658 (S.D.N.Y.1973).

trol Data Corporation, but which it refused to turn over to the Government in the instant litigation. On July 16, 1973, Cravath, for the first time in this litigation, claimed an interest in the documents covered by Pretrial Order No. 5 independent of the previously asserted attorney-client privilege of IBM.[3] As was set out in this court's memorandum of January 4, 1974, Cravath, on July 16, 1973, submitted an order to show cause why it should not be permitted to intervene as a matter of right in the contempt proceeding, fifty minutes before the scheduled contempt hearing. The court refused to act on the order to show cause and on August 1, 1973 rendered its decision holding IBM in contempt. Thereafter, IBM and Cravath sought appellate review of the contempt order. On December 17, 1973 the court of appeals dismissed the appeal and denied the petition for mandamus. International Business Machines Corp. v. United States, 493 F.2d 112 (2d Cir. 1973) petition for cert. filed, 42 U.S.L. W. 3407 (U.S. Jan. 7, 1974) (No. 73–1065). The court of appeals found that "Cravath's attempted intervention in the contempt proceeding" was not properly before it.[4] On December 18, 1973, the court received a letter from counsel representing Cravath, which in relevant part stated:

> In view of the December 17 decision of the Court of Appeals, in the above matter, we respectfully request that Your Honor indicate a date and time for a hearing on the intervention motion of Cravath, Swaine & Moore.

In its memorandum of January 4, 1974, the court refused to sign the previously tendered order to show cause, but stated that its decision was "not intended to prejudice the applicant's right to bring on a motion to intervene in proper form."

Thereafter, Cravath submitted . the instant motion. The motion must be denied for a number of reasons. First, for policy reasons a lawyer should not be permitted to intervene in an action to assert a work product claim. Secondly, under Fed.R.Civ.P. 24(a), which governs intervention as a matter of right, the instant application is defective in at least two respects: (a) it was untimely and (b) the applicant's interest is adequately represented by an existing party.

---

3. *See* Transcripts of May 12, September 26, and October 5, 1972.

4. The court of appeals' entire discussion of the intervention question is as follows:

    V. *Intervention by Cravath.*

    We agree with the Government that Cravath's attempted intervention in the contempt proceeding is not properly before this court. The application for intervention was never determined by the court below, because the application was not filed until the morning of the hearing on July 16, 1973. The intervention motion attempted to substitute the Cravath firm for IBM apparently on the ground that it was Cravath's decision rather than IBM's which led to the noncompliance with Pretrial Order No. 5. We feel, however, as was repeatedly stated, that the true purpose was to permit the lawyers to be adjudged in token contempt to provide an appellate vehicle and thereby escape the thrust of International Business Machines Corp. v. United States, 480 F.2d 293 *supra*. In any event, intervention questions like every other aspect of Government civil anti-trust cases are reviewable only in the Supreme Court on direct appeal under the Expediting Act. *See* United States v. California Cooperative Canneries, 279 U.S. 553, 49 S.Ct. 423, 73 L.Ed. 838 (1929). There is no doubt that the Supreme Court may consider a direct appeal from such a denial. *See, e. g.*, Nader v. United States, 410 U.S. 919, 93 S.Ct. 1363, 35 L.Ed.2d 582 (1973).[10]

    10. Cravath argues that the contempt petition should be treated as a separate action wholly apart from the main case, so as to take it outside the scope of the Expediting Act. We do not view the contempt hearing that way, but rather as integrally related to the underlying anti-trust action in that the order is imposed to effectuate compliance with the discovery ordered in that case.

■■ It would be an unsound policy to allow attorneys to intervene in an action to protect a work product claim. Claims of work product can be adequately dealt with under the framework of Fed.R.Civ.P. 26(b)(3). If Cravath were permitted to intervene to assert its work product claim, an unfortunate precedent would be established. Complex cases would be shackled with yet another procedural roadblock. In a large case there are many instances in which a district judge must rule on discovery motions bearing on work product claims. Currently, rulings on such discovery orders are not appealable. But an order denying an application for intervention *as of right* is appealable since it excludes the applicant from participating in the litigation and is thus a final order as to him. 3B J. Moore ¶ 24.15, at 24–561. Consequently, to circumvent the usual nonappealability rule, attorneys asserting a work product claim may seek to intervene in order to secure otherwise unobtainable appellate review. Consequently, courts should discourage applications to intervene by attorneys asserting work product claims. Accordingly, there are sound policy reasons for denying Cravath's motion.

Notwithstanding the policy rationale presented above, the Cravath motion to intervene could not withstand scrutiny under Rule 24(a)(2), which in pertinent part provides as follows:

Upon timely application anyone shall be permitted to intervene in an action: . . . (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

For Cravath to satisfy the substantive requirements of Rule 24(a)(2) it must show (1) that it claims an interest in the documents covered by Pretrial Order No. 5; (2) that, as a practical matter, that interest may be impaired by the contempt proceeding; and (3) that IBM inadequately represents its asserted interest. Ionian Shipping Co. v. British Law Insurance Co., 426 F.2d 186, 189 (2d Cir. 1970). Additionally, under the prefatory language to Rule 24(a) it must demonstrate that its application for intervention was timely.

Cravath asserts that its intervenor's pleading with respect to the contempt proceeding amply demonstrates that it satisfied each of the requirements for intervention of right.[5] Additionally,

5. The intervenor pleading asserted:
INTERVENOR, CRAVATH, SWAINE & MOORE, pursuant to Rule 24(c) of the Federal Rules of Civil Procedure, pleads as follows:
1. Intervenor reaffirms and adopts as its Pleading pursuant to Rule 24(c) of the Federal Rules of Civil Procedure the Response to the Order to Show Cause, submitted on its behalf as well as on behalf of International Business Machines Corporation ("IBM"), incorporates herein by reference all papers previously filed herein on its behalf and further states as follows:
2. The documents covered by Pretrial Order No. 5 whose enforcement is in issue in this contempt proceeding, include documents with respect to which Cravath, Swaine & Moore ("Cravath") has claimed its work product privilege.
3. The Department of Justice in its appellate papers in the United States Court of Appeals for the Second Circuit and the Supreme Court of the United States argued that appellate review of Pretrial Order No. 5 should await a contempt sanction against IBM "or its representative".
4. Cravath has possession of the documents covered by Pretrial Order No. 5.
5. Cravath, not respondent IBM, has refused to turn over said documents to petitioner and has sought a contempt citation against itself.
6. But in this proceeding the Department of Justice has requested that a contempt cititation be entered only against IBM.
7. Cravath has an interest relating to the property which is the subject of this

Cravath contends that its application was timely because it was filed as soon as it became necessary to intervene to protect its own interest—*i. e.,* when the Government reversed its position on a plainly appealable contempt order.

The Government has controverted only the adequacy of representation and timeliness elements. Consequently, for purposes of this opinion the court will assume *arguendo* that Cravath satisfies the other requirements of the four-pronged intervention test set out above.

Cravath contends that IBM cannot adequately represent its interest because of the contempt sanction (a fine of $150,000 per day) imposed by this court. It apparently argues that because of this contempt sanction, IBM may be forced to comply with Pretrial Order No. 5 without due regard for Cravath's work product claims. On the other hand, the Government contends that Cravath's interest is adequately represented by IBM for at least two reasons. First, it alleges that Cravath and IBM are represented by the same counsel—*i. e.,* Simon H. Rifkind, Esq. From this it concludes:

> It is an absurd metaphysical exercise to believe that the same counsel representing both IBM and Cravath, did not adequately represent Cravath while adequately representing IBM and that that same counsel can now adequately represent Cravath by making further arguments on its behalf.

The second point urged by plaintiff is that Cravath has not asserted that its interests are inconsistent with those of IBM.

The court finds that Cravath's interest in the contempt proceeding was and is adequately represented by IBM. As to the Government's first argument—*i. e.,* that Cravath and IBM are represented by the same counsel—the court believes that this factor merits consideration, but it need not rely exclusively on this factor in concluding that Cravath's interest is adequately represented. Carroll v. American Federation of Musicians of the United States and Canada, 33 F.R.D. 353 (S.D.N.Y.1963), in which the court stated: "Inadequate representation can hardly be claimed as the same attorney represents both the original plaintiff and the proposed intervenors." *Id.* at 353–354. As to the Government's second point, it is true that if IBM and Cravath had conflicting interests, Cravath would be on firmer ground in seeking intervention.[6] But merely because their interests are not inconsistent does not *a fortiori* lead to the conclusion that Cravath's interest is adequately represented.[7]

Any inquiry with respect to adequate representation must necessarily focus on a comparison of the interests asserted by the applicant for intervention and the existing party. This view is shared by some of our leading commentators on federal practice and procedure.[8] Among them are Professors Wright and Miller, who have articulated a scheme to compare the interests of a proposed inter-

---

proceeding and is so situated that the disposition of the proceeding may, as a practical matter, impair or impede its ability to protect that interest, said property interest being the right to prevent disclosure or publication of the contents of numerous documents as to which its work product privilege has been asserted.

8. The amount of the penalty sought by the Department of Justice to be imposed upon IBM may be so great as practically to prevent any appellate review of an adjudication of contempt and thereby irrep-

arably destroy the rights of Cravath in the subject matter of the proceeding.

6. *See, e. g.,* 3B J. Moore ¶ 24.08 [2] & n. 5; 7A C. Wright & A. Miller § 1909, at 524–25 & n. 77.

7. *See, e. g.,* Nuesse v. Camp, 128 U.S.App. D.C. 172, 385 F.2d 694, 703 (1967); Peterson v. United States, 41 F.R.D. 131, 134 (D.Minn.1966).

8. *See, e. g.,* 7A C. Wright & A. Miller § 1909, at 524; Shapiro, *supra* note 1, at 740–48.

venor with those of an existing party. Their analysis is as follows:

> The most important factor in determining adequacy of representation is how the interest of the absentee compares with the interests of the present parties. If the interest of the absentee is not represented at all, or if all existing parties are adverse to him, then he is not adequately represented. If his interest is identical to that of one of the present parties, or if there is a party charged by law with representing his interest, then a compelling showing should be required to demonstrate why this representation is not adequate. Finally, if his interest is similar to, but not identical with that of one of the parties, a discriminating judgment is required on the circumstances of the particular case, but he ordinarily should be allowed to intervene unless it is clear that the party will provide adequate representation for the absentee.[9]

This scheme classifies the interest of the proposed intervenor as being either "adverse," "identical" or "similar" to that of an existing party. If the absentee's interest is either "not represented . . . or if all existing parties are adverse to him," then, under the Wright and Miller analysis, the proposed intervenor "is not adequately represented."

It is clear under the facts of this case that Cravath's interest is represented by IBM and that IBM's interest is not adverse to that of Cravath. Accordingly, the first classification is inapplicable to the instant case.

Unlike the first category of this scheme, the other classifications articulated by Wright and Miller are not dispositive of the adequacy of representation question. If an applicant comes within the first—not represented or adverse—category, then without more it is concluded that the applicant is not adequately represented. On the other hand, if the applicant's interest is either "identical" or "similar" to that of an existing party, the scheme merely lays out a standard under which the adequacy of representation question is analyzed. If the interest of the proposed intervenor is "identical" to that of an existing party, intervention should not be allowed unless there is a compelling showing as to why the existing representation is inadequate. When the interest asserted by the absentee is similar, but not identical, to the interest of a party, then ordinarily intervention should be permitted "unless it is clear that the party will provide adequate representation for the absentee."

If "interest" is viewed from the perspective of the result sought by proposed

---

9. 7A C. Wright & A. Miller § 1909, at 524. Professor Shapiro suggested a similar analysis when he wrote as follows:

> This discussion demonstrates, I think, that adequacy of representation is a very complex variable indeed. At one extreme, when the applicant is seeking to assert his own separate claim for relief against one of the parties, it is not really an issue at all. At the other extreme, when the applicant is making no claim of his own but is seeking to assert the same position as one who is already a party and whose interests precisely coincide with his, the issue of adequacy should be, as Mr. Justice Stewart suggests, limited to questions of competence, collusion, and bad faith. But between these poles lies a substantial area

where the question of adequacy is closely tied to that of interest. In these cases the applicant wants not to make his own claim but to support or supplement the position of one of the parties whose stake in the proceeding differs from his, though there may be no conflict of interest between them. The court's judgment in such cases should be influenced in part by the extent of the applicant's interest—do considerations of fairness strongly suggest that he be heard on a matter of this importance to him—and in part by the contribution that he can make to the court's understanding of the case in the light of his knowledge and concern.

Shapiro, *supra* note 1, at 748 (footnotes omitted).

intervenor vis-à-vis the result sought by the existing party,[10] then it is clear that Cravath and IBM have the identical interest. Both want the documents as to which Cravath asserts a work product claim withheld from the Government. Indeed, both wish to have all documents covered by Pretrial Order No. 5 withheld from production to the Government.[11]

When the interests of an applicant for intervention are considered identical with those of a party the courts have developed a three-pronged test to determine whether intervention should be granted.[12] This test received its first judicial articulation by Justice (then Judge) Blackmun in Stadin v. Union Electric Co., 309 F.2d 912 (8th Cir. 1962), cert. denied, 373 U.S. 915, 83 S. Ct. 1298, 10 L.Ed.2d 415 (1963).[13] He stated:

> [I]nadequacy of representation is or may be shown by proof of collusion between the representative and an opposing party, by the representative having or representing an interest adverse to the intervenor, or by the failure of the representative in the fulfillment of his duty.

*Id.* at 919, 83 S.Ct. 1298, 10 L.Ed.2d 415. This standard has received the endorsement of both the courts [14] and leading commentators.[15] Although some courts have limited this "strict test" to damage suits, General Motors Corp. v. Burns, 50 F.R.D. 401, 404 & n.10 (D.Hawaii 1970), there have been instances in which it has been applied in other contexts. *See,* e. g., Moore v. Tangipahoa Parish School Board, 298 F.Supp. 288 (E.D.La.1969) (school desegregation case.) Even though there is disagreement regarding the context in which the "strict test" should apply, this court agrees with the position asserted by Professor Shapiro in a very thorough article on intervention. Professor Shapiro stated that

> when the applicant is making no claim of his own but is seeking to assert the same position as one who is already a party and whose interests precisely coincide with his, the issue of adequacy should be, as Mr. Justice Stewart sug-

10. *See, e. g.,* Moore v. Tangipahoa Parish School Board, 298 F.Supp. 288, 292 (E.D. La.1969) ; Peterson v. United States, 41 F. R.D. 131, 134 (D.Minn.1966). *Cf.* Farmland Irrigation Co. v. Dopplmaier, 220 F.2d 247, 249 (9th Cir. 1955).

11. Since Pretrial Order No. 5 was entered IBM "has produced a large number of these documents to the Government and that, presently, only some 700 documents remain in issue." United States v. International Business Machines Corp., 60 F.R.D. 658, 661 n. 3 (S.D.N.Y.), appeal dismissed, 493 F.2d 112 (2d Cir., 1973), petition for cert. filed, 42 U.S.L.W. 3407 (U.S. Jan. 7, 1974) (No. 73–1065).

12. *Cf.* Nuesse v. Camp, 128 U.S.App.D.C. 172, 385 F.2d 694 (1967), in which Judge Leventhal stated: "These factors [the three-pronged test] have their most common and appropriate application in class actions, *where the applicant's interest is identical to that of an existing party.*" *Id.* 385 F.2d at 703 (emphasis added).
For a slightly different version of this test see note 16 *infra* and accompanying text.

13. Although *Stadin* was decided before the 1966 Amendment to Rule 24(a) most authorities agree that the substantive meaning of adequate representation was not changed by the amended rule. Peterson v. United States, 41 F.R.D. 131, 133 (D.Minn.1966) ; 3B J. Moore ¶ 24.09–1 [4], at 24–314–15, in which Professor Moore states: "[I]t must be inferred that prior precedent defining what constituted 'inadequacy of representation' under the old rule, should generally be applicable under the new Rule." (footnotes omitted).

14. *See* cases cited by Chief Judge Pence in General Motors Corp. v. Burns, 50 F.R.D. 401, 404 n. 10 (D.Hawaii 1970) ; Annot., 84 A.L.R.2d 1419–422 (1962). *Cf.* Hatton v. County Board of Education, 422 F.2d 457, 461 (6th Cir. 1970).

15. 3B J. Moore ¶ 24.08 [2] & nn. 4–6; 7A C. Wright & A. Miller § 1909, at 523–24 (would not limit standard to three-prong test). *Cf.* Shapiro, *supra* note 1, at 748.

gests, limited to questions of competence, collusion, and bad faith.[16]

■ Under the "outcome-interest" analysis presented above, the adequacy of representation question should turn on whether there has been a showing of (1) collusion;[17] (2) adversity of interest;[18] (3) possible nonfeasance;[19] or (4) incompetence.[20] It cannot be said that there is any collusion between the existing parties to this litigation. Additionally, Cravath does not allege that there is conflict between its interest and that of IBM. Moreover, it should be noted that the Government specifically pointed to this lack of adversity as demonstrating that Cravath's interest is adequately represented by IBM. Furthermore, any assertion that IBM has been negligent or nonfeasant belies the vigorous and determined manner in which IBM has litigated the validity of Pretrial Order No. 5. Lastly, the court fails to see how IBM can be deemed incompetent to protect any interest that Cravath may have in the Pretrial Order

No. 5 documents. Consequently, applying the "strict test" to the situation in which Cravath can be considered to be asserting the identical interest, viewed from the outcome sought, as IBM, it is apparent that none of the elements tending to demonstrate inadequacy of representation can be established.

Cravath, however, insists that its interest is different from IBM's because "the work product interest belongs to the attorney and can be asserted or waived only by the attorney and not his client." Reply Memorandum in Support of Cravath's Application to Intervene and Cravath's and IBM's Motion to Vacate the Adjudication of Contempt, at 3, citing and quoting, Connecticut Mutual Life Insurance Co. v. Shields, 16 F.R.D. 5 (S.D.N.Y.1954), in which this court stated: "[e]ven if an attorney-client privilege existed, its waiver would be irrelevant to the guiding consideration affording a lawyer a measure of protection against the intrusion of an adver-

---

16. Shapiro, *supra* note 1, at 748.

17. *See* cases cited in 3B J. Moore ¶ 24.08 [2] n. 4.

18. *See, e. g.*, Smith v. Sherwood Oil Field Contractors, 457 F.2d 1339 (5th Cir.), cert. denied, 409 U.S. 980, 93 S.Ct. 308, 34 L.Ed. 2d 243 (1972); 3B J. Moore ¶ 24.08 [2] n. 5.

It should be observed that the "adversity of interest" element is duplicative of the threshold finding that the proposed intervenor's interest is not inconsistent with that of an existing party, which is the theoretical predicate for evaluating the adequacy of representation question under the so-called "strict test." This was recognized by Professor Shapiro. In formulating his test of adequate representation when the applicant for intervention is asserting the identical interest as an existing party, Professor Shapiro eliminated the "lack of adversity" element and substituted the "competence" ingredient. Shapiro, *supra* note 1, at 748. The "strict-three-pronged" test preceded the development of the "interest analysis," which mandates as a threshold inquiry, that a court compare the interest asserted by the proposed intervenor with that of an existing party, before

applying either the "strict" (when the interests are identical) or "liberal" (when the interests are merely similar) tests. For continuity with the older, pre-1966 amendment cases, which are still applicable on the adequacy of representation question. *see* note 13 *supra*, the court has retained the lack of adversity element in its application of the "strict" test.

19. *See, e. g.*, 3B J. Moore ¶ 24.08 [2] n. 6.

20. The court views the "competence" element as relating to the ability, both legally and practically, of an existing party to represent an interest of a proposed intervenor. It is unequivocally clear that an attorney may assert, without intervening in an action, a work product claim under Fed.R.Civ.P. 26(b)(3). Accordingly, there is no legal impediment to IBM's representing Cravath's interest. Furthermore, there was no practical bar to IBM's representing Cravath's interest. After all Cravath was counsel to IBM, was throughly familiar with all matters relating to the documents coverde by Pretrial Order No. 5, and was certainly capable of asserting its work product claim. *See* note 3, *supra*.

sary into his files." *Id.* at 8.[21] Hence, the interest of a lawyer in his work product can be considered unique and, therefore, distinct from that of his client. Viewed from this perspective the interests of IBM and Cravath are not identical, but merely similar. This is a recognition that "[i]nterests may be different without being adverse." *Peterson v. United States,* 41 F.R.D. 131, 134 (D.Minn.1966). When the interests are similar but not identical, Wright and Miller suggest a more liberal test of adequate representation—*i. e.,* "a discriminating judgment is required on the circumstances of the particular case, but [the applicant for intervention] ordinarily should be allowed to intervene unless it is clear that the party will provide adequate representation for the absentee."[22]

Even under the more liberal test it is clear that IBM has provided adequate representation for Cravath. In reaching this conclusion the court has given due consideration to the unique facts presented by this case. Nevertheless, two of the factors that have influenced this conclusion should be mentioned. First, the history of this litigation amply demonstrates IBM's willingness to vigorously litigate the validity of Pretrial Order No. 5.[23] These efforts are, and have been, aimed at protecting whatever claims of privilege exist with regard to the documents covered by Pretrial Order No. 5.[24] Secondly, in determining adequacy of representation under the liberal test, the commentators suggest that a court "must consider whether the absentee is likely to have anything of his own to say that will be of value."[25] There is nothing that Cravath could contribute as a party that it could not contribute as counsel to IBM. Consequently, Cravath's interest in this proceeding has been, and can continue to be, adequately represented by IBM.

In addition to failing one of the substantive tests under Rule 24(a)(2), the instant application for intervention must be rejected because it cannot meet the threshold requirement of timeliness.

Cravath has continually argued that its motion was timely because it was filed only after it became apparent that

21. It should be noted that neither IBM nor Cravath ever formally presented the work product claim to the court prior to the attempted intervention of July 16, 1973. *See* note 3 *supra* and accompanying text. The court is not unaware of the distinction between the attorney-client privilege and the special immunity granted to trial preparation materials ("work product") under Fed.R. Civ.P. 26(b)(3). *See* note 24 *infra.*

22. One court stated that the cases adopting the liberal test, "if they refer to the wording of Rule 24(a) at all, stress the phrase in old Rule 24(a) that one may intervene *if his representation 'may be' inadequate.*" *General Motors Corp. v. Burns,* 50 F.R.D. 401, 405 (D. Hawaii, 1970) (footnote omitted) (emphasis added).

23. For a discussion of the litigation history up until this court's adjudication of contempt see *United States v. International Business Machines Corp.,* 60 F.R.D. 658, 660–665 (S.D.N.Y.), appeal dismissed, 493 F.2d 112 (2d Cir. 1973), petition for cert. filed, 42 U.S.L.W. 3407 (U.S. Jan. 7, 1974) (No. 73–1065). The post-contempt history is discussed in *United States v. International*

*Business Machines Corp.,* 62 F.R.D. 523 (S.D.N.Y.1974) and pp. 532–533 *supra.* In addition, it should be noted that on January 7, 1974, IBM filed the following papers in the Supreme Court: (1) a petition for an extraordinary writ of mandamus or certiorari to the United States District Court for the Southern District of New York and motion for leave to file (No. 73–1064); (2) a petition for a writ of certiorari to the United States Court of Appeals for the Second Circuit (No. 73–1065). On the same day Cravath filed a Jurisdictional Statement on the intervention question. (No. 73–1066) IBM's previous Supreme Court filings were discussed in the August 1, 1973 contempt opinion. 60 F.R.D. at 661 & n. 4.

24. It cannot be asserted that Cravath was inadequately represented by IBM because IBM never formally raised the work product claim. *See* notes 3 & 21 *supra.* Cravath was IBM's counsel and certainly could have brought the work product claim to the attention of the court. *See* note 20 *supra.*

25. 7A C. Wright & A. Miller § 1909, at 534–35; Shapiro, *supra* note 1, at 748.

it could not protect its own interest without intervening. It claims that this point was reached when the Government reversed its position on a plainly appealable contempt order. United States v. International Business Machines Corp., 69 Civ. 200, 62 F.R.D. 523, 525 (S.D.N.Y. 1974).

Responding to this argument, the Government asserts that Cravath was on notice that it was seeking production of the documents covered by Pretrial Order No. 5 as of April 7, 1972, the date on which the Government filed its motion for production. Additionally, whatever interest Cravath may have had in these documents was certainly in jeopardy as of September 26, 1972, when Pretrial Order No. 5 was entered. Therefore, plaintiff urges that Cravath's attempt to intervene on the morning of the contempt proceeding—July 16, 1973—was too late. In support of its argument, the Government cites NAACP v. New York, 413 U.S. 345, 93 S.Ct. 2591, 37 L. Ed.2d 648 (1973), in which the Supreme Court affirmed a district court ruling denying intervention to the NAACP in a declaratory judgment action by the State of New York against the United States, seeking to have certain provisions of the Voting Rights Act of 1965 held inapplicable to the counties of New York, Bronx and Kings. *Id.* at 348–349, 93 S.Ct. 2591, 37 L.Ed.2d 648. Four days after the "United States filed its formal consent . . . to the entry of the declaratory judgment for which New York had moved." *Id.* at 360, 93 S. Ct. at 2600, appellants filed their motion to intervene. *Id.* Although the "United States took no position with respect to the appellants' motion . . . New York opposed the motion on six grounds." *Id.* at 362, 93 S.Ct. at 2601. The first ground urged was "untimeliness in that the suit had been pending for more than four months, an article about it had appeared in early February in *The New York Times,* and the appellants did not deny that they had knowl-

edge of the pendency of the action." *Id.* In holding that the motion to intervene —after the United States filed its consent to the entry of summary judgment for New York—was untimely, the Court stated:

> We, however, need not confine our evaluation of abuse of discretion to the facts just mentioned, for the record amply demonstrates that appellants failed to protect their interest in a timely fashion after March 21, 1972, the date they allegedly were first informed of the pendency of the action. At that point, the suit was over three months old and had reached a critical stage. The United States had answered New York's complaint on March 10 and in that answer had clearly indicated that it was without knowledge or information sufficient to form a belief as to the truth of New York's allegation that the State's literacy tests were administered without regard to race or color. App. 13a. New York, in reliance upon this answer, then filed its motion for summary judgment. The only step remaining was for the United States either to oppose or to consent to the entry of summary judgment. This was the status of the suit at the time the appellants concede they were aware of its existence. It was obvious that there was a strong likelihood that the United States would consent to the entry of judgment since its answer revealed that it was without information with which it could oppose the motion for summary judgment. Thus, it was incumbent upon the appellants, at that stage of the proceedings, to take immediate affirmative steps to protect their interests either by supplying the Department of Justice with any information they possessed concerning the employment of literacy tests in a way designed to deny New York citizens of the right to vote on account of race or color, or by presenting that information to the District Court itself by way of an immediate motion to inter-

vene. *Id.* at 367, 93 S.Ct. at 2603 (footnote omitted).

In urging the denial of the instant motion, the Government asserts that "[t]he applicant in the present circumstances stands in a position which is even less favorable than the unsuccessful intervenor in *NAACP.*"

█ It should be noted that timeliness is a matter within the sound discretion of the trial court. *See; e. g.,* NAACP v. New York, 413 U.S. 345, 366, 93 S.Ct. 2591, 37 L.Ed.2d 648 (1973); Iowa State University Research Foundation v. Honeywell, Inc., 459 F.2d 447, 449 (8th Cir. 1972), aff'g sub nom. Honeywell, Inc. v. Sperry Rand Corp., 54 F.R.D. 593 (D.Minn.1971); FMC Corp. v. Keizer Equip. Co., 433 F.2d 654 (6th Cir. 1970); 7A C. Wright & A. Miller § 1916 & n. 97, at 572–73; 3B J. Moore ¶ 23.13 [1], at 24–524. Nevertheless, where, as here, intervention as a matter of right is sought, courts have been more liberal in exercising their discretion over the timeliness requirement. *See, e. g.,* McDonald v. E. J. Lavino Co., 430 F.2d 1065, 1073 (5th Cir. 1970); Diaz v. Southern Drilling Corp., 427 F. 2d 1118, 1126 (5th Cir.) cert. denied, 400 U.S. 878, 91 S.Ct. 118, 27 L.Ed.2d 115 (1970); Honeywell Inc. v. Sperry Rand Corp., 54 F.R.D. 593, 595 (D. Minn.1971), aff'd sub nom. Iowa State University Research Foundation v. Honeywell, Inc., 459 F.2d 447 (8th Cir. 1972). Even under the more liberal standard Cravath's application to intervene was untimely.

█ Although the mere lapse of time does not render a motion to intervene untimely, a court will consider the time element itself in exercising its discretion. *See, e. g.,* Smith Petroleum Service Inc. v. Monsanto Chemical Co., 420 F.2d 1103, 1115 (5th Cir. 1970); 3B J. Moore ¶ 24.13 [1], at 24–523, in which it is stated: "Whether an application for intervention is timely does not depend solely upon the amount of time that may have elapsed since the institution of the action, although of course that is a relevant consideration." In measuring the time element itself a court must consider "[t]he length of time during which the proposed intervenor has known about his interest in the suit without acting . . . ." Diaz v. Southern Drilling Corp., 427 F.2d 1118, 1125 (5th Cir.), cert. denied, 400 U.S. 878, 91 S.Ct. 118, 27 L.Ed.2d 115 (1970). In the instant case, whatever interest Cravath had in the documents in question accrued, not when the Government sought a civil contempt sanction, as contended by the proposed intervenor, but rather when the Government first sought production of these documents—*i. e.,* on April 7, 1972. Additionally, even if we assume *arguendo* that intervention only became necessary when it became apparent that this court might not enter a plainly appealable contempt order, the July 16, 1973 application was still untimely. As was pointed out in this court's January 4 memorandum, Cravath should have been on notice that this court was considering a *civil* sanction against IBM as of June 25, 1973, when "IBM was served with . . . order to show cause why it should not be held in civil contempt for its failure to comply with Pretrial Order No. 5. . . ." United States v. International Business Machines Corp., 62 F.R.D. 523, at 525 (S.D.N.Y., 1974). According, even though Cravath had knowledge that this court was considering a civil sanction on June 25, 1973, its application to intervene was not made until a few minutes before the scheduled contempt hearing on July 16, 1973. Consequently, however the time period is measured, this factor weighs heavily against the applicant's contention that its motion was timely. But as stated above the time element itself is not dispositive. A court must take all relevant circumstances into account in evaluating the timeliness of a motion to intervene.

It is firmly established that the most significant criterion in determining

timeliness is whether the delay in moving for intervention has prejudiced any of the existing parties. *See, e. g.,* McDonald v. E. J. Lavino Co., 430 F.2d 1065, 1073 (5th Cir. 1970); Diaz v. Southern Drilling Corp., 427 F.2d 1118, 1125 (5th Cir.), cert. denied, 400 U.S. 878, 91 S.Ct. 118, 27 L.Ed.2d 115 (1970); Smith Petroleum Service, Inc. v. Monsanto Chemical Co., 420 F.2d 1103, 1115 (5th Cir. 1970). Although Cravath has contended that "The Government was prepared and tried to argue the merits of Cravath's application at the hearing on July 16, 1973," this does not demonstrate a lack of prejudice to the Government. It is true that Government counsel attempted to make some brief remarks on the merits of the intervention motion at the July 16 hearing.[26] The substance of Government counsel's statement was that the motion was so frivolous that it should be denied out of hand. But had the court directed argument on the motion, it was beyond peradventure that plaintiff was unprepared to argue the merits under the relevant Rule 24(a) case law. The only course that would have permitted the Government to properly prepare its argument in opposition would have been for the court to postpone the entire contempt proceeding. Such a course would have caused even greater prejudice to the Government. On July 16, 1973 Pretrial Order No. 5 was already ten months old and defendant continued in its refusal to comply with it. Further delay would have caused more prejudice to the Government's preparation of this most important and complex case. After ten months it was necessary for this court to invoke a contempt sanction to coerce compliance with its order. Moreover, there is authority for denying a motion to intervene made just as a trial is about to begin. *See, e. g.,* 7A C. Wright & A. Miller § 1916 & n. 7, at 577. If the contempt proceeding is analogized to a trial the above principle militates against Cravath's argument that its motion was timely.

In further support of its timeliness contention, Cravath has urged that it "had every reason to, and did, expect from the District Court:

> (i) accommodation of the Second Circuit's views; or at the very least
>
> (ii) facilitation of appellate review."

As to its "accommodation" assertion Cravath argues as follows:

> In addition by June a majority of a Second Circuit panel had already expressed strong disapproval of Pretrial Order No. 5. *The third appellate judge had expressed no dissent on that score,* but found a lack of jurisdiction with which a majority of the *en banc* Court subsequently agreed. Here then was a classic example of views expressed on the merits by appellate judges with respect to a nonappealable order. In such situations, it has been the practice of district judges in this Circuit to accommodate their views to the views of the Court of Appeals . . . .

Reply Memorandum in Support of Cravath's Application to Intervene and Cravath's and IBM's Motion to Vacate the Adjudication of Contempt, at 5–6 (emphasis added).

---

26. Transcript of July 16, 1973, at 16–17:

There is one paper perhaps to which I should advert and that is a paper that was filed this morning and this I understand runs contrary to the Court's suggestion, but I did want to make an observation as to it. IBM has filed what I regard as a frivilous [sic] paper on intervention and it seems to me that counsel here, Cravath, Swaine & Moore, are before this Court just as Government counsel are and are governed as officers of this court by what the Court directs and that a petition for intervention, while absolutely unnecessary, can be denied out of hand.

THE COURT: Isn't that a discussion on the merits? Didn't I indicate very clearly that this would not be heard by the Court today?

The claim, italicized in the above excerpt, with respect to the third appellate judge expressing no dissent on the merits is patently inaccurate, blatantly distorted and inconsistent with Cravath's own prior view of this matter.

If a law school professor asked a first year student to state the narrow holding of Judge Mulligan's dissent in International Business Machines Corp. v. United States, 471 F.2d 507, 517–523 (2d Cir. 1972), rev'd on reh. en banc on jurisdictional grounds, 480 F.2d 293 (2d Cir. 1970), petition for cert. filed, 42 U. S.L.W. 3033 (U.S. June 11, 1973) (No. 72–1662), it may well be that the student's response would be confined to the jurisdictional question. Nevertheless, it cannot be said, as Cravath so cavalierly contends, that Judge Mulligan "expressed no dissent" on the merits. A few selected excerpts from Judge Mulligan's well reasoned opinion should suffice to rebut counsel's misleading statement:

(1) The horrendous consequences of Judge Edelstein's Pre-Trial Order No. 5 compelling the production of IBM documents presumably privileged before disclosure to CDC, are not readily apparent. 471 F.2d at 520.

(2) Since the United States is not a party to the Minnesota District actions and did not appear in any of the pre-trial discovery hearings, it is not bound by them. Judge Edelstein should not be bound either. *Id.*

(3) While Judge Edelstein did not write an opinion below, he did caution against the opening of a Pandora's box which would result if the inadvertent waiver doctrine were here countenanced. This was not as Delphic a pronouncement as it might first appear. He later referred to the "second bite of the apple" which could be urged in all cases where on second thought a party might conclude that a document was really privileged and the privilege, though normally lost or waived by surrender, was not deliberate or consciously waived because of a mistake. This would inundate the trial court as well as the appellate court with collateral litigation which would create intolerable delay. *Id.*

(4) Even if we were not bound by the Expediting Act, I fail to see such egregious conduct as usurpation of power or a clear abuse of discretion (Schlagenhauf v. Holder, 379 U.S. 104, 110–111, 85 S.Ct. 234, 13 L.Ed.2d 152 (1964)) so as to justify the granting of extraordinary relief. The issuance of an order directing disclosure is clearly within the power of the district court under Fed.R.Civ.P. 37. Since the matter is properly pending before the district judge, his refusal to accept the inadvertent waiver position adopted in another case by another judge, cannot reasonably be characterized as a usurpation of power. Nor do we consider it to be a clear abuse of discretion. The record does not warrant the assumption that IBM withdrew its interceptor only because of Judge Neville's assurance that he would "brook no argument" thereafter that the privilege had been waived merely because the document had been seen by CDC and perhaps copied. That assurance was only forthcoming in his order of April 18, 1972 on the motion of IBM which order was made some 11 days after the motion of the United States in the Southern District of New York to compel disclosure of the 1200 questioned documents. It would seem reasonable to assume that all of these documents had been already made available to CDC prior to this determination. Judge Neville's prior ruling was contrary and his initial attitude unclear. His first indication of a position was in an in-chambers hearing on November 2, 1970. While his intent then may well have been to protect both CDC and IBM against inadvertent waivers by production of documents according to a time schedule he

had set, his order of April 18th, 1972 candidly admits that his November, 1970 position was not "crystal clear" and counsel to IBM has admitted in an affidavit that the Judge made no explicit ruling. His next ruling on April 21, 1971 was clear. He refused to countenance the defense of inadvertent waiver. He again frankly states in his order of April 18, 1972 this ruling was "both erroneous and inadequate in scope." It is significant that both CDC and IBM each claimed that privileged documents had been mistakenly revealed and that the Judge wished to deal evenhandedly with both claims (a factor not present in the Southern District proceeding). In any event his rulings are not questioned here nor does it appear that he ever contemplated that they would be held applicable to the United States in a wholly separate proceeding in another federal judicial district. In view of the admitted vacillation and obscurity of Judge Neville's prior rulings, we cannot accept the majority's stance that IBM was gulled into a delivery of privileged material with an assurance of judicial protection. *Id.* at 521–522.

(5) It is perhaps instructive to note that IBM which now claims clear contractual protection never raised the December, 1970 agreement in the May 12, 1972 hearing before Judge Edelstein but only raised the issue on September 26, 1972 after his adverse ruling of September 12, 1972. While counsel urges that this was inadvertent and we do not question this, if the agreement was as clearly decisive of the issue as is now asserted, it is difficult to understand how it could be overlooked. In any event the letter does not explicitly or by implication in our view support the proposition that the United States here agreed to be bound by the rulings of a tribunal in which it was not a party and had not appeared. Certainly the United States had no right to the excised material under its agreement but we see no waiver of its rights to seek the data in question by court order in New York. It has done so and the court below has ruled in its favor. *Id.* at 523.

(6) Judge Edelstein is charged with the responsibility of conducting this litigation which is not only complex but has national economic significance. His decision here on pre-trial discovery in view of the procedural and substantive complexities yet to be faced in the management of this monstrous litigation, in my view, is clearly within the scope of his discretion. But it is not appealable in any event and by no means can it be characterized as a usurpation of power which should prompt this court to intervene by the extraordinary writ of mandamus. I would leave it alone. *Id.*

Additionally, in a previously tendered memorandum, counsel for IBM declared that "every judge which has considered the question on the merits, *with the exception of Judge Mulligan,* has concluded that there should be no waiver." Reply Memorandum in Support of Defendant's Motion for Stay of Pretrial Order No. 5 and Memorandum in Opposition to Government's Motion of October 2, 1972, at 6 (May 25, 1973) (emphasis added). Accordingly, Cravath's assertion that this court should have conformed to the view expressed by Judges Moore and Timbers fails to hold much weight in light of Judge Mulligan's strong dissenting opinion. In addition, reliance on *Aaacon Auto Transport, Inc. v. Ninfo,* 490 F.2d 83 (2d Cir. 1974) and *International Products Corp. v. Koons,* 325 F.2d 403, 407 (2d Cir. 1963) for the accommodation point is inapposite. In both of these cases the court of appeals was unanimous in suggesting that the action taken by the district judges was incorrect. As pointed out earlier, this is not the situation in the matter under consideration. Here Judge Mulligan expressed strong disagreement with his brethren

Moore and Timbers. As to Cravath's point that it expected a plainly appealable contempt order, it is appropriate to repeat what was said in this court's contempt order of August 1, 1973: "it is not proper for the district court to enter an order which is designed to either thwart or promote an interlocutory appeal." 60 F.R.D. at 666.

In sum, the court finds that Cravath's motion to intervene was untimely. Accordingly, Cravath's motion to intervene *nunc pro tunc* in the contempt proceeding is denied.

Since the court has denied the application to intervene, there is no need to vacate the August 1, 1973 adjudication of contempt on the ground that Cravath should have been permitted to intervene before the court proceeded with the contempt hearing.

▉ IBM has moved to vacate this court's adjudication of contempt on due process and equal protection grounds. This argument is patently frivolous and totally without merit. The court refused to sign the July 16, 1973 order to show cause—why Cravath should not be permitted to intervene as of right—because it failed to comply with Local General Rule 9(c)(4).[27] United States v. International Business Machines Corp., 69 Civ. 200, 62 F.R.D. 523 (S.D.N.Y. 1974). In its memorandum in support of this motion, IBM stated:

> The procedural infirmity which the Court has concluded infected IBM's

July 16, 1973 application infects the Government's entire contempt proceeding. The procedures adopted by the United States for invoking this Court's contempt power complied no more with the requirements stated in this Court's January 4 Memorandum than did the procedures used by Cravath in applying to intervene.[28]

From this defendant concludes that "the contempt order predicated on the Government's defective papers must be vacated."[29]

Under Local Civil Rule 14(a) "[a] proceeding to adjudicate a person in civil contempt of court . . ." may "be commenced by the service of a notice of motion or order to show cause." Notwithstanding the language of Local Civil Rule 14(a) that a civil contempt may be brought on either by notice of motion or order to show cause, it has been traditional to invoke the latter procedure.[30] Moreover, the Cravath order to show cause cannot, and did not, stand in the same position as the Government order to show cause which initiated the contempt proceeding. In view of the entire litigation history of Pretrial Order No. 5 [31] it was apparent that good cause was shown for this court to sign the Government's application for an order to show cause why IBM should not be held in contempt for its continued refusal to comply with Pretrial Order No. 5. This point was aptly put by the Government in its memorandum in opposition to the

---

27. Local General Rule 9(c)(4) provides as follows: "No order to show cause to bring on a motion will be granted except upon a clear and specific showing by affidavit of good and sufficient reasons why procedure other than by notice of motion is necessary."

28. Memorandum in Support of Cravath's Application to Intervene and Cravath's and IBM's Motion to Vacate the Adjudication of Contempt, at 3 (January 21, 1974).

29. Reply Memorandum in Support of Cravath's Application to Intervene and Cravath's and IBM's Motion to Vacate the Adjudication of Contempt. at 9 (February 6, 1974).

30. *E. g.,* In re Savin, 131 U.S. 267, 9 S.Ct. 699, 33 L.Ed. 150 (1888), in which the first Justice Harlan stated:

'[I]n cases of misbehavior of which the judge cannot have . . . personal knowledge, and is informed thereof only by the confession of the party, or by the testimony under oath of others, the proper practice is, by rule or other process, to require the offender to appear and show cause why he should not be punished.

*Id.* at 277, 9 S.Ct. at 702. *See* Dobbs, Contempt of Court: A Survey, 56 Cornell L. Rev. 183, 221 (1971). *Cf.* Fed.R.Crim.P. 42(b).

31. *See* note 23 *supra.*

instant motion. Plaintiff argued as follows:

> The reasons for expeditious action by the Court were apparent on the fact [sic] of the Government pleadings which are now being attacked for the first time on procedural grounds. The Government's petition of June 25, 1973, was preceded by a decision of the Supreme Court on June 13, 1973 denying IBM a stay, thereby removing the last obstacle towards an enforcement of Pre-Trial Order No. 5. That decision was followed by a position letter by the defendant dated June 15, 1973 inviting an expedited order of contempt and a responsive position statement by the plaintiff dated June 20, 1973, noting the appropriateness of contempt. These circumstances, in addition to justifying expeditious action by the Court, were set forth in the affidavit of Raymond M. Carlson, attached to the petition of June 25, 1973. Thus, it was clearly proper for this Court, promptly presented with a petition for an order to show cause on June 25, 1973 and also concerned with a year's delay in the compliance with its Order, to have set down the hearing on the order to show cause on the date for a previously established pre-trial hearing, June 28, 1973.[32]

Accordingly, the last minute application by Cravath cannot be favorably compared with the Government order to show cause. Furthermore, it was not incumbent on this court to sign an order to show cause requesting relief—intervention for an attorney asserting a work product claim—which was of such dubious substantive merit. This point was recognized by Judge Oakes in dismissing the contempt appeal when he stated "that the true purpose [of the intervention motion] was to permit the lawyers to be adjudged in token contempt to provide an appellate vehicle and thereby escape the thrust of International Business Machines Corp. v. United States, 480 F.2d 293 [(2d Cir. 1973) (en banc), petition for cert. filed, 42 U.S.L.W. 3033 (U.S. June 11, 1973) (No. 72–1662)]." International Business Machines Corp. v. United States, 493 F.2d 112, 120 (2d Cir. 1973), petition for cert. filed, 42 U.S.L.W. 3407 (U.S. Jan. 7, 1974) (No. 73–1065).

Additionally, even assuming *arguendo* that the order to show cause why IBM should not be held in contempt failed to comply with Local General Rule 9(c)(4), this did not, as IBM apparently contends, so contaminate the contempt proceeding as to mandate vacation of the August 1, 1973 adjudication of contempt. Consequently, the instant motion to vacate the adjudication of contempt is denied.

So ordered.

---

32. Memorandum In Response to Defendant's and Cravath, Swaine and Moore's Notice of Motion of January 21, 1974, at 5–6 (February 1, 1974).